**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LATERRIA SMITH, as the Independent
Administrator of the ESTATE OF JAYDEN D.
PERKINS, Deceased, *et al.*,

        *Plaintiffs*,

      *v.*

ILLINOIS PRISONER REVIEW BOARD,
*et al.,*

        *Defendants.*

Case No. 25-cv-04279

Judge Sunil R. Harjani

### DEFENDANT CITY OF CHICAGO'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant City of Chicago ("City") by one of its attorneys, Marion C. Moore, Chief Assistant

Corporation Counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to dismiss

Plaintiffs' Complaint for failure to state a claim. In support of this motion, the City states as follows:

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………....1

STATEMENT OF FACTS………………………………………………………………2

STANDARD OF REVIEW………………………………………………………………5

ARGUMENT………………………………………………………………………..5

I.    The Court should Consider BWC, the Criminal Court Docket, and Smith's Criminal Trial Testimony, all of which Refute Plaintiffs' Claims.………………………………..6

II.    CPD is a Nonsuable Entity, Nullifying Counts IV, VI, XIX, and XXIII………………7

III.    Plaintiffs' Federal Claims in Counts IV, VI, and XIII Fail as a Matter of Law.………8

    a.  Plaintiffs have not established a constitutional violation.…………………………8

        i.   *No City actor took an affirmative act that created or increased danger to Plaintiffs.*………11

        ii.   *Plaintiffs have not sufficiently alleged causation*……………………………………...12

    b.  Counts IV, VI, and XIII also fail because Plaintiffs have not sufficiently alleged widespread policy, deliberate indifference, or moving force………………………13

IV.    Counts XIX and XXIII Fail as a Matter of Law because the City is Immunized from Liability for Negligence.………………………………………………………..15

V.    Counts XXVI, XXVIII, and XXIX Fail as a Matter of Law Pursuant to the Illinois Tort Immunity Act………………………………………………………………16

VI.    Counts XIX, XXIII, XXVI, XXVIII, and XXIX Fail because they are Unsupported by the Facts.………………………………………………………………...17

VII.    Count XXX Fails if the Underlying Claims Fail.………………………………18

CONCLUSION………………………………………………………………………19

## TABLE OF AUTHORITIES

Page(s)

Cases

Adkins v. VIM Recycling, Inc.,
  644 F. 3d 483 (7th Cir. 2011)........................................................................7
Alcorn v. City of Chicago, 17 C,
  2018 WL 3614010 (N.D. Ill. July 27, 2018) ............................................ 14
Arriaga v. Dart,
  2021 WL 308829 (N.D. Ill. 2021) ............................................................. 11
Ashcroft v. Iqbal,
  556 U.S. 662 (2009)............................................................................... 5, 13
Atkins v. City of Chicago,
  631 F.3d 823 (7th Cir. 2011) .......................................................................5
Averhart v. City of Chicago,
  114 Fed.Appx. 246 (7th Cir. 2004) ............................................................7
Baskins v. Gilmore,
  2018 WL 4699847 (N.D. Ill. Sept. 30, 2018)........................................... 18
Beard v. O'Neal,
  728 F.2d 894 (7th Cir.1984) ..................................................................... 12
Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)......................................................................................5
Bogie v. Rosenberg,
  705 F.3d 603 (7th Cir. 2013) .......................................................................6
Brooks v. Ross,
  578 F.3d 574 (7th Cir. 2009) ..................................................................... 13
LLC v. Comedy Partners,
  682 F.3d 687 (7th Cir. 2012) .......................................................................6
Buchanan-Moore v. County of Milwaukee,
  570 F.3d 824 (7th Cir. 2009) .......................................................................9
Calhoun v. Ramsey,
  408 F.3d 375 (7th Cir. 2005) ..................................................................... 14
Chan v. Wodnicki,
  123 F.3d 1005 (7th Cir. 1997).....................................................................7
Chancey v. Suburban Bus Division of Regional Transportation Authority,
  52 F.3d 623 (7th Cir. 1995)..........................................................................5
City of Los Angeles v. Heller,
  475 U.S. 796 (1986)......................................................................................8
Courtney v. City of Chi.,
  439 F. App'x 557 (7th Cir. 2011) ...............................................................7
DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,
  489 U.S. 189 (1989).............................................................................. 9, 10
Ennenga v. Starns,
  677 F.3d 766 (7th Cir. 2012)........................................................................7
Estate of Her v. Hoeppner,
  939 F.3d 872 (7th Cir. 2019) ..................................................................... 11

*First Midwest Bank v. City of Chicago,*
 988 F.3d 978 (7th Cir. 2021)..................................................................................8, 10, 13

*Flint v. City of Belvidere,*
 791 F.3d 764 (7th Cir. 2015) ...........................................................................11, 12

*Harris v. City of Chicago,*
 2021 WL 1192438 .............................................................................................. 14

*Henson v. CSC Credit Servs.,*
 29 F.3d 280 (7th Cir.1994) ...................................................................................7

*Hutton v. City of Chicago,*
 2021 WL 809731 (N.D. Ill. Mar. 3, 2021) ......................................................... 14

*Hyung Seok Koh v. Graf,*
 No. 11-cv-02605, 2013 WL 5348326 (N.D. Ill. Sept. 24, 2013)............................6

*J.K.J. v. Polk Cty.,*
 928 F.3d 576 (7th Cir. 2019).............................................................................. 12

*Jaimes v. Cook County,*
 2022 WL 2806462 (7th Cir. 2022) ...................................................................... 10

*Jenkins v. Bartlett,*
 487 F.3d 482 (2007)............................................................................................8

*Jordan v. City of Chicago et al.,*
 2021 WL 1962385 .............................................................................................. 14

*Kirk v. Michael Reese Hosp. & Med. Ctr.,*
 117 Ill. 2d 507 (1987)......................................................................................... 18

*Lacey v. Village of Palatine,*
 232 Ill. 2d 349 (2009).............................................................................15, 16, 17

*Lewis v. Chi. Police Dep't,* No. 14 C,
 2015 WL 14069715 (N.D. Ill. Oct. 6, 2015)..........................................................7

*Lewis v. City of Chicago,*
 496 F.3d 645 (7th Cir. 2007).................................................................................7

*Marsh v. Caruana,*
 2022 WL 17038962 (N.D. Ill. November 17, 2022) ............................................. 10

*Matthews v. City of East St. Louis,*
 675 F.3d 703 (7th Cir. 2012).................................................................................8

*McCauley v. City of Chicago,*
 671 F.3d 611 (7th Cir. 2011)............................................................................... 13

*Miles v. McNamara,*
 2014 WL 948884 (N.D. Ill. Mar. 11, 2014) ..........................................................7

*Monell v. Dep't of Soc. Servs. of City of New York,*
 436 U.S. 658 (1978).............................................................................................8

*Monfils v. Taylor,*
 165 F.3d 511 (7th Cir. 1998) ..........................................................................9, 11

*Pavlik v. Kornhaber,*
 761 N.E.2d 175, 326 Ill. App. 731 (1st Dist. 2001) ............................................. 18

*Pouk v. Village of Romeoville,*
 405 Ill. App. 3d 194 (2010) ................................................................................ 15

*Ree v. City of Chicago,*
 2023 WL 3123761 (N.D. Ill. Apr. 27, 2023) ..........................................................6

*Reed v. Gardner,*
 986 F.2d 1122 (7th Cir. 1993)............................................................................. 11

iv

*Taliferro v. Augle,*
  757 F.2d 157 (7th Cir. 1985)............................................................................................12
*Washington, v. City of Chicago*, No. 24 C,
  2025 WL 1262569 (N.D. Ill. May 1, 2025) ......................................................................14
<u>*Weiland v. Loomis,*</u>
  938 F.3d 917 (7th Cir. 2019).............................................................................................10
*White v. Rochford,*
  592 F.2d 381 (7th Cir. 1979).............................................................................................11

Statutes

745 ILCS 10/1-101 ......................................................................................................................15
745 ILCS 10/2-202 ......................................................................................................................15
745 ILCS 10/2-109 .................................................................................................................15, 18
745 ILCS 10/4-102 ......................................................................................................................16
745 ILCS 10/4-107 ......................................................................................................................16
750 ILCS 60/305 ..........................................................................................................................16

Rules

Fed. R. Evid. 201(b)......................................................................................................................7
Federal Rule of Civil Procedure 12(b)(6)............................................................................1, 5, 6, 7

v

# INTRODUCTION

Plaintiff Laterria Smith and her children were the unfortunate victims of a violent and deadly act of domestic violence committed by a private citizen named Crosetti Brand on March 13, 2024. Plaintiff's Complaint, Docket ("Dkt.") No. 2, at ¶¶ 46-49. Mr. Brand showed up at Plaintiffs' apartment on that date and stabbed both Smith and her older child, tragically killing him, all in front of Smith's other minor child. *Id.*

Plaintiffs bring multiple claims against multiple defendants as a result of this horrific ordeal. Specifically as to the City of Chicago,[1] Plaintiff's claims are as follows: Section 1983 "Failure to Protect" against the Chicago Police Department ("CPD")(Count IV), Section 1983 Failure to Intervene against CPD (Count VI), a *Monell* claim against the City (Count XIII), Negligence against CPD (Count XIX), Negligent Infliction of Emotional Distress ("NIED") against CPD (Count XXIII), Intentional Infliction of Emotional Distress ("IIED") against the City (Count XXVI), Wrongful Death against both CPD and the City (Count XXVIII), Survival Act against both CPD and the City (Count XXIX), and Indemnification against the City (Count XXX).

Plaintiffs' Complaint is an attempt to hold the City liable for a violent act committed by a private citizen who has no affiliation with the City. As discussed more fully below, the law is clear that such liability can only occur in very limited circumstances, none of which are present here. Moreover, the actual facts contradict the allegations contained in Plaintiffs' Complaint and establish that liability against the City is unsupported. What happened to Smith and her children is tragic, to be sure, but there is no legal or factual foundation for Plaintiffs' claims against the City. Counts IV, VI, XIII, XIX,

---

[1] Plaintiff brings claims against the Chicago Police Department, a nonsuable entity. As discussed more fully below, for this reason, Counts IV, VI, XIX, and XXIII should be dismissed at the outset. For efficiency's sake, however, this motion also treats these claims as being pleaded against the City.

XXIII, XXVI, XXVIII, XXIX, and XXX (as they pertain to the City) should therefore be dismissed with prejudice.

## STATEMENT OF FACTS

### Plaintiffs' Allegations

As to the City, Plaintiffs allege that the City "maintained a widespread policy, practice, or custom of failing to protect domestic violence victims and enforce protective orders, creating a foreseeable and systemic risk of harm." *Id.* at ¶ 5. They further allege that it the City "failed to take action on Ms. Smith's reports of Brand's protection order violations and imminent threats." *Id.* To support these conclusions, Plaintiffs allege that on February 1, 2024, Brand arrived at Plaintiffs' home uninvited, ringing the doorbell and pulling on the handle, all in violation of a "protection order and parole conditions." *Id.* at ¶ 35. Plaintiffs allege that Smith immediately called police, "explicitly informing them that Brand was violating the protection order and parole conditions." *Id.* at ¶ 36. Plaintiffs go on to allege that "[i]nstead of arresting Brand for violating the protection order and parole conditions, CPD officers refused to take a formal report documenting the incident, dismissed Ms. Smith's urgent pleas, and instructed her to return to court to obtain another protective order, despite the existing order being valid and enforceable." *Id.* at ¶ 37. Plaintiffs further allege, "[d]espite clear probable cause to arrest Brand on the spot, CPD officers outright refused to intervene." *Id.* at ¶ 104. Plaintiffs make these same or substantially similar allegations throughout the Complaint and in the counts against the City. Despite alleging in conclusory fashion in paragraph 34 that multiple other threats were reported to the Chicago Police Department, Plaintiffs provide no details whatsoever on on when or how those threats were reported. Indeed, other than the February 1, 2024 incident, Plaintiffs include no facts regarding any other time Smith called the Chicago police or interacted with any Chicago police officers. *See Id.*, generally.

**Judicially Noticeable and Contradictory Facts Outside the Complaint**

The allegations referenced above are directly contradicted by facts that this Court can take judicial notice of and by the bodyworn camera ("BWC") footage of Smith's interaction with the Chicago Police on February 1, 2024. Indeed, BWC from the February 1, 2024 interaction proves the allegations contained in paragraph 37 of Plaintiffs' Complaint to be demonstrably false and the court docket and testimony from the criminal trial of Mr. Brand show that no order of protection was in place at the time of the incident. Because these items are critical to the claims in this case, the City asks that this Court consider them even though they are outside of the four corners of the complaint. The City outlines these facts below, and attaches the BWC of one officer as Exhibit 1[2], the docket for criminal case No. 24 CR 0366501, *People v. Crosetti Brand*, as Exhibit 2, and excerpts of Smith's May 12, 2025 trial testimony from said criminal case as Exhibit 3.

The BWC footage of February 1, 2024 and Ms. Smith's testimony in the criminal trial against Mr. Brand for this crime paint a very different picture than Plaintiffs' Complaint. BWC footage from Chicago police officers shows the entirety of the interaction with Smith on February 1, 2024. The video shows that three officers (two officers and a sergeat) responded to her 911 call. Ex. 1 at 03:00. One officer and the sergeant immediately begin looking to see if the ex-boyfriend was still on the property or in the area (and he was *not*), as one officer remains speaking with Smith for the entirety of the interaction. Ex. 1. That officer tells Smith he thinks he has been there before and she denies it, saying it was someone else. Ex. 1 at 03:30-03:34. Smith tells the officers that she does not know why her ex-boyfriend was there and that he did not threaten her. Ex. 1 at 03:50-03:57, 06:40-6:43. A neighbor in the background asks Smith whether she is ok and she states that she is "fine." Ex. 1 at 03:49-04:04. She tells the officer that Brand did not say anything, just knocked on the door and pulled

---

[2] During Mr. Brand's criminal trial, Smith identified herself in still shots of the bodyworn camera video from February 1, 2024. This testimony lays the proper foundation for this video should it be necessary for purposes of this motion. *See* Exhibit 3 at 170:16-176:11.

the handle. Ex. 1 at 04:10-04:45. When the officers ask if he ever battered her, she says yes but that it was a long time ago, this was the first time she had seen him in awhile, that all previous reports she made against him were a long time ago, and that he has since been in prison. *Id.* She tells the officers that he was just standing outside the door and made no threats. Smith tells the officers she has not seen him in eight years and that he was just released from prison and was just trying to reach out. Ex. 1 at 06:20-06:43. Most notably, she does not say that she has an active order of protection against Brand and the officers advise her that she should go obtain one and explain how to do so. Ex. 1 at 5:10-05:45, 07:28-08:33. The officers ask whether there have been an recent reports and whether Brand has been told not to be there, and Smith answers no, that all the reports were a long time ago. Ex. 1 at 05:10-05:45. The officers explain to Smith that they unfortunately cannot do anything because nothing she has told them amounts to a criminal violation and again advise her on obtaining an order of protection. Ex. 1 at 07:28-08:33. At no point in the interaction does Smith tell the officers she is afraid or feels threatened and she makes no pleas for help. Because Brand was no longer on scene and Smith had not told the officers anything criminal he had done, the interaction concluded. Ex. 1. The officers then tell Smith to call them back if she needs them. Ex. 1 at 07:28-08:33.

There are no records of any other calls for service from Smith (nor does she allege any) until the March 13, 2024 incident underlying this lawsuit. As a result of the incident, Brand was charged with a multitude of crimes, including murder, attempted murder, home invasion, armed robbery, and aggravated domestic battery. Exhibit 2. Notably, he was *not* charged with a violation of an order of protection. *Id.* This is because there was none. Indeed, Smith testified at Brand's criminal trial that she and Brand had begun to see each other again after he was released from prison (a fact she withheld from and explicitly denied to Chicago police officers on February 1, 2024) and that when he threatened her via text message she responded that she would obtain an order of protection against him. Exhibit 3 at 82:8-83:16, 140:4-141:1; *See also* Exhibit 1. Moreover, Plaintiffs' own allegations in their Complaint

4

– that Smith went to seek an order of protection on February 21, 2024 – belie the notion that there was one in place on February 1, 2024. *See* Dkt. No. 2 at ¶¶ 41-42. While it is difficult to prove a negative, Smith's statements to police, the criminal docket, the criminal trial testimony, and Plaintiffs' own allegations show that there was in fact no active order of protection against Brand in February or March 2024.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that, when accepted as true, will state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff's statement of claims requires more than labels, conclusions, or a recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. The Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff, *Chancey v. Suburban Bus Division of Regional Transportation Authority*, 52 F.3d 623, 626-27 (7th Cir. 1995), but may disregard a complaint's "inconceivable" allegations. *Atkins v. City of Chicago*, 631 F.3d 823, 830 (7th Cir. 2011).

## ARGUMENT

Plaintiffs' claims fail for multiple reasons. First, CPD is a nonsuable entity, meaning that Counts IV, VI, XIX, and XXIII should be dismissed at the outset because CPD is the only defendant listed for those claims. Second, Counts IV, VI, and XIII all fail because Plaintiffs did not suffer a constitutional violation and have not made out a constitutional claim. Third, any *Monell* claims also fail because Plaintiffs do not sufficiently allege the existence of a widespread practice, deliberate indifference on the part of a final policymaker, or moving force. Fourth, the Illinois Tort Immunity Act provides immunity from liability as to Counts XIX, XXIII, XXVI, XXVIII, and XXIX. Fifth,

immunity aside, the facts incorporated by reference and by judicial notice demonstrate that the state law claims are completely unsupported by facts. And sixth, if the other claims fail, so too does the Count XXX Indemnification claim. Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

**I.** **The Court should Consider BWC, the Criminal Court Docket, and Smith's Criminal Trial Testimony, all of which Refute Plaintiffs' Claims.**

When videotapes of the relevant events are incorporated by reference into the complaint and are central to the claims, courts need not accept the factual allegations as true if they are blatantly contradicted by the videos. *See Bogie v. Rosenberg*, 705 F.3d 603, 608-09 (7th Cir. 2013) (district courts are free to consider video recordings that are referenced in the complaint and central to the claim; to the extent the video conflicts with the complaint, the video controls). The purpose of the incorporation-by-reference doctrine is to "prevent a plaintiff from evad[ing] dismissal under Rule 12(b)(6) by failing to attach to his complaint a document that prove[s] his claim has no merit." *Brownmark Films, LLC v. Comedy Partners, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Indeed, courts within this district have considered video footage at the motion to dismiss stage even when it is not referenced in the plaintiff's complaint. *See, e.g.*, *Hyung Seok Koh v. Graf*, No. 11-cv-02605, 2013 WL 5348326 (N.D. Ill. Sept. 24, 2013); *Ree v. City of Chicago*, No. 1:22-cv-04284, 2023 WL 3123761, at *4 (N.D. Ill. Apr. 27, 2023). Here, Plaintiffs have made specific reference to the conversations Smith had with Chicago police officers on February 1, 2024 and have included purported details of what was said. The details of the conversations that Smith had with these officers are central to her claims against the City – without them, she would have no claim. And more importantly, as discussed above, the BWC footage of the conversations utterly discredits Plaintiffs' allegations. Plaintiffs should not be able to "evade dismissal" because they do not refer to the BWC footage that demonstrates their claims are without merit. *Brownmark Films, LLC*, 682 F.3d at 690. Accordingly, this Court can, and should, consider the body-worn camera footage of the referenced

February 1, 2024 incident in conjunction with Plaintiffs' Complaint in deciding the City's motion to dismiss.

Additionally, when weighing a Rule 12(b)(6) motion, the court may take judicial notice of facts in the public record without the request to dismiss being converted into a motion for summary judgment. See *Adkins v. VIM Recycling, Inc.*, 644 F. 3d 483, 493 (7th Cir. 2011); see also *Miles v. McNamara*, 2014 WL 948884, at *1 (N.D. Ill. Mar. 11, 2014); *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012); see also *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir.1994) (finding public court documents judicially noticeable). Facts are judicially noticeable when they are not reasonably in dispute because (a) they are generally known in the Court's jurisdiction or (b) "accurately and readily determined from sources whose accuracy cannot reasonably be questioned. FED. R. EVID. 201(b). Here, both the criminal court docket from case *People v. Brand* and Smith's testimony in same are facts in the public record and not reasonably in dispute. Therefore, this Court should take judicial notice of Exhibits 2 and 3 and consider them when weighing this motion.

## II.     CPD is a Nonsuable Entity, Nullifying Counts IV, VI, XIX, and XXIII.

Plaintiffs name only CPD as a defendant in Counts IV, VI, XIX, and XXIII. However, the Chicago Police Department is an organizational division of the City with no legal existence independent of it. It is well-established in Illinois that a police department is not a suable entity. See, *e.g.*, *Chan v. Wodnicki*, 123 F.3d 1005, 1007 (7th Cir. 1997); *Averhart v. City of Chicago*, 114 Fed.Appx. 246, 247 (7th Cir. 2004); *Lewis v. City of Chicago*, 496 F.3d 645, 645 n. 1 (7th Cir. 2007); *See Lewis v. Chi. Police Dep't*, No. 14 C 7317, 2015 WL 14069715, at *2 (N.D. Ill. Oct. 6, 2015) (Bucklo, J.) ("'[T]he [CPD] is not a suable entity' and must be dismissed from this case.") (quoting *Courtney v. City of Chi.*, 439 F. App'x 557, 558 (7th Cir. 2011)). Therefore, no proper defendant is named in Counts IV, VI, XIX, and XXIII, so they should be dismissed at the outset. Moreover, CPD should be dismissed from Counts XXVIII and XXIX.

III.    **Plaintiffs' Federal Claims in Counts IV, VI, and XIII Fail as a Matter of Law.**

In the interest of efficiency, the City will address Counts IV and VI as if they were pleaded against it because all federal claims fail as a matter of law. To the extent Counts IV and VI are meant to invoke *respondeat superior* liability, they should be dismissed. Indeed, local governments "may not be sued under §1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). This type of liability would constitute *respondeat superior*, or vicarious liability, which is not permitted. *Jenkins v. Bartlett*, 487 F.3d 482, 492 (2007). Instead, a municipality "may only be liable for constitutional violations caused by the municipality itself through its own policy or custom." *Id.* To the extent Counts IV and VI are read to be additional *Monell* claims, they should be dismissed, along with Count XIII, for the reasons discussed below.

Counts IV, VI, and XIII appear to be premised on an alleged violation of 14th Amendment Due Process, with Count IV titled as "Failure to Protect" and Count VI as "Failure to Intervene" based on Chicago police officers' purported failure to act against Brand and Count XIII being a *Monell* claim premised on these same failures and injuries. Thus, the first question here is whether Plaintiffs have plausibly alleged a violation of their constitutional rights.[3] The answer is clearly no. Moreover, lack of constitutional violation aside, Counts IV, VI, and XIII should also be dismissed because Plaintiffs have not adequately pleaded the other elements of a *Monell* claim.

**c.  Plaintiffs have not established a constitutional violation.**

Plaintiffs claim the City violated their rights when Mr. Brand forced his way into their apartment and committed his heinous crime. But purely private misconduct, which is what is alleged here, cannot violate those rights. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 983 (7th Cir. 2021)

---

[3] It is well settled that a plaintiff cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986-87 (7th Cir. 2021); *See also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Matthews v. City of East St. Louis,* 675 F.3d 703, 709 (7th Cir. 2012).

("it has long been settled that 'a State's failure to protect an individual against private violence ... does not constitute a violation of the Due Process Clause'")(*quoting DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)).

In *DeShaney*, Joshua DeShaney sought to hold the county liable under *Monell* for purely private misconduct – there, brutal child abuse by his father – on the ground that the county had promulgated deficient policies that deprived him of his Fourteenth Amendment right to Due Process. *Deshaney*, 489 U.S. at 193. The Supreme Court held that Joshua suffered no constitutional violation because "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195. The purpose of due process is "to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196. Thus, due process "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* For that reason, "the State cannot be held liable under the [Due Process] Clause for injuries that could have been averted had it chosen to provide" such aid. *Id.* at 196-97. And because Joshua suffered no constitutional violation in the first place, the Court explained, his constitutional claim failed, *id.* at 202, making it unnecessary to consider "whether the allegations in the complaint are sufficient to support a § 1983 claim against the county and DSS under *Monell*," *id.* at 202 n.10.

After *DeShaney*, there are only two circumstances in which the government may be held liable for failing to prevent private misconduct: (1) when the plaintiff was in government custody; or (2) the government engaged in conscience-shocking misconduct that created or increased the danger to a particular, foreseeable plaintiff rather than the general public. *See Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827-28 (7th Cir. 2009); *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998).

Here, Plaintiffs appear to be proceeding under the second circumstance mentioned above, the so-called "state-created danger" theory. This second circumstance is difficult to allege because it is extremely narrow, if even viable. *See, e.g., Jaimes v. Cook County*, 2022 WL 2806462 at *3 (7th Cir. 2022)("We have stressed that liability under the state-created danger theory has only been found under 'rare and often egregious' circumstances")(citations omitted); *Weiland v. Loomis*, 938 F.3d 917, 918 (7th Cir. 2019)(expressing doubt about whether state-created danger is a proper exception to *DeShaney*); *Marsh v. Caruana*, 2022 WL 17038962 at *4 (N.D. Ill. November 17, 2022)(Reinhard, J.)(noting the Seventh Circuit's "doubt about whether this exception was appropriately derived from *DeShaney*). Indeed, in *Weiland*, the Seventh Circuit exhibited doubt over whether the "state-created danger" theory can be reconciled with *DeShaney* and explained that cases finding "liability outside of prisons when the state has disabled or undermined self-help or sources of private assistance" "have a footing in *DeShaney*" that the "test" described below "lacks." 938 F.3d at 920-21.

Even operating on the idea that the "state-created danger" theory is appropriate under *Deshaney*, the facts alleged here do not support a "state created danger" theory in this case. As the Seventh Circuit has expressed,

> [t]he *DeShaney* exception for state-created dangers is narrow. A plaintiff must show that the state affirmatively placed him in a position of danger and that the state's failure to protect him from that danger was the proximate cause of his injury. To satisfy the proximate-cause requirement, the state-created danger must entail a foreseeable type of risk to a foreseeable class of persons. A generalized risk of indefinite duration and degree is insufficient. Finally, because the right to protection against a state-created danger arises from the substantive component of the Due Process Clause, the state's failure to protect the plaintiff must shock the conscience.

*First Midwest Bank*, 988 F.3d at 988-89 (citations omitted). Plaintiffs do not meet this standard. Plaintiffs do not adequately allege an affirmative act nor conscience-shocking behavior. Additionally, Plaintiffs do not adequately allege cause-in-fact. Therefore, Plaintiffs fail to state a constitutional claim and Counts IV, VI, and XIII should be dismissed.

         *i.   No City actor took an affirmative act that created or increased danger to Plaintiffs.*

This case is akin to *Deshaney*, and does not fit into the "state-created danger" exception. What Plaintiffs are alleging here is simply that the Chicago police officers who responded on February 1, 2024 did not do enough to protect them and failed to arrest Brand. But the Chicago Police officers' response on February 1, 2024 did not "affirmatively" put Plaintiffs in danger on March 13, 2024 and Plaintiffs have not alleged an affirmative act taken by a City actor that affirmatively placed them in a position of danger.

Plaintiffs merely allege a purported failure to act that did not change the alleged status quo (Crosetti Brand harassing them). The case law supports dismissal in such a situation. *See, e.g., Arriaga v. Dart*, 2021 WL 308829 (N.D. Ill. 2021)(allegations that supervisors took affirmative act of disclosing transgender identity of plaintiff to other employees, who in turn harassed her); *Estate of Her v. Hoeppner*, 939 F.3d 872 (7th Cir. 2019)(affirming summary judgment where operation of swimming pond did not create or increase the danger to plaintiff's decedent); *Monfils v. Taylor*, 165 F.3d 511, 518 (7 Cir. 1998)(upholding jury verdict where officer increased danger to plaintiff's decedent by failing to prevent release of tape of anonymous call); *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979)(state created a danger by arresting driver/uncle and leaving children on the side of the road in a vehicle); *Flint v. City of Belvidere*, 791 F.3d 764, 770 (7th Cir. 2015)(disclosure of confidential informant's identity not the cause-in-fact of his murder); *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993)(potential state-created danger when officers arrest sober driver and in effect allow a drunk driver to get behind the wheel). Moreover, especially when taking the BWC into account, Plaintiffs certainly have not alleged conscience-shocking behavior by any Chicago police officer or City actor because Brand was no longer on scene and no City actor was placed on actual notice that Smith and Brand needed more intervention than was provided. Therefore, Plaintiffs have not sufficiently alleged a constitutional violation.

ii.     *Plaintiffs have not sufficiently alleged causation.*

Plaintiffs' constitutional claims also fail as a matter of law because they have failed to plausibly allege that any widespread custom or the act of any City employee were the cause of their injuries. Because Section 1983 was "enacted against a background of common law tort principles governing causation," those principles are generally "applicable to federal civil-rights cases." *Taliferro v. Augle*, 757 F.2d 157, 161-62 (7th Cir. 1985). Moreover, *Monell* liability requires "a direct causal connection" between an alleged policy and a plaintiff's injuries, *J.K.J. v. Polk Cty.*, 928 F.3d 576, 599 (7th Cir. 2019). It must also be noted that "[t]hough recent cases only include *proximate* cause (which hinges on foreseeability) as an element, it is well-established that recovering damages for a constitutional tort also requires causation in fact—'i.e., that the defendant caused the claimed injury." *Flint v. City of Belvidere*, 791 F.3d 764, 770 (7th Cir. 2015)(quoting *Beard v. O'Neal,* 728 F.2d 894, 898–99 (7th Cir.1984)(other citations omitted).

Here, Plaintiffs essentially allege that had the officers on February 1, 2024 arrested Brand, the incident on March 13, 2024 would not have happened. Not only is that unsupported speculation that need not be accepted, but this causal connection has a fatal flaw: Plaintiffs also allege that Brand was picked up on a parole violation and sent back to prison, only to be released due to inaccurate testimony in front of the Illinois Prisoner Review Board. Dkt. No. 2 at ¶¶ 40, 44. And Plaintiffs have made no factual allegations whatsoever that Smith or Brand had any contact with a City actor between February 1, 2024 and March 13, 2024. Causation is a requirement for the claims Plaintiffs bring in this suit. Under this factual scenario, there are no allegations Plaintiffs could put forth that would create a plausible inference that any City action was the cause of their injuries. Therefore, Plaintiffs have not stated a valid constitutional claim and Counts IV, VI, and XIII should be dismissed.

**b.      Counts IV, VI, and XIII also fail because Plaintiffs have not sufficiently alleged widespread policy, deliberate indifference, or moving force.**

Even if this Court finds that Plaintiffs have sufficiently alleged a violation of their constitutional rights (which it should not), the federal claims against the City still fail because Plaintiffs have not sufficiently alleged the other elements of a *Monell* claim. A plaintiff may seek to hold a municipality liable in three ways: because of an express policy that causes a constitutional injury when enforced, a widespread practice so permanent and well-settled that it constitutes a custom or practice; or the direct acts of a final policymaker. *First Midwest Bank*, 988 F.3d at 987. In the case of an allegation of a widespread practice, as Plaintiffs allege here, a plaintiff must meet three elements. First, they must show the existence of the widespread practice; then they must show deliberate indifference to the alleged practice, and finally show that the practice was the moving force behind the constitutional injury. *Id.*

To state a custom and practice *Monell* claim, a plaintiff must plead factual content to allow the court to draw the reasonable inference that the City maintains the problematic policy or practice in question. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681). This entails "provid[ing] some **specific facts** to support the legal claims asserted in the complaint." *Id.*; *see also, e.g., Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (emphasis added). Although the specificity of these facts is not easily quantified, it must be "enough detail about the subject-matter of the case to present a story that holds together." *McCauley*, 671 F.3d at 616. Plaintiff has failed to do so. Here, Plaintiffs have mostly relied upon Smith's February 1, 2024 experience. But Judge Kendall recently opined:

> To successfully plead a "widespread practice" claim, Plaintiff must allege facts showing that **at least more than one instance** of the alleged conduct occurred to establish that a practice in fact exists and that [plaintiff]'s allegedly unconstitutional arrest was not merely a random event. . . . . **Plaintiff may rely on incidents relating only to him**, . . . **but he still must allege multiple such incidents** such that the Court can draw the reasonable inference that the alleged practice was "so permanent and well

settled" as to constitute custom with the force of law. **Plaintiff fails to identify a single other instance.**

*Alcorn v. City of Chicago*, 17 C 5859, 2018 WL 3614010, at *17 (N.D. Ill. July 27, 2018) (Kendall, J.) (emphasis added) (citing *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). More recently, Chief Judge Kendall dismissed a similarly deficient *Monell* claim, stating "[w]ith a single incident and no surrounding context, [plaintiff's] *Monell* claim fails to cross the line from conceivable to plausible." *Washington*, *v. City of Chicago*, No. 24 C 12842, 2025 WL 1262569 at *4 (N.D. Ill. May 1, 2025)(Kendall, C.J.). This is the widely accepted standard for "widespread practice" *Monell* claims.

Here, Plaintiffs make mention of one incident that occurred *after* the underlying incident here, with no factual specificity about said incident, only conclusory statements. Dkt. No. 2 at ¶¶ 58, 226. Aside from making (incorrect) allegations relating to February 1, 2024 and conclusory allegations relating to the after-the-fact other incident, Plaintiffs provide nothing more than conclusory statements relating to purported policies and practices. *See, e.g.*, Dkt. No. 2 at ¶¶ 210, 213, 214, 217-220. These conclusory allegations do not need to be accepted as true and do not make it plausible that such a widespread practice existed in March 2024. Therefore, Plaintiffs have not alleged a widespread practice.

Nor have Plaintiffs pleaded with any factual specificity that a policymaker was deliberately indifferent to this widespread practice or that this practice was the moving force of the conduct here. Indeed, Plaintiffs provide only buzzwords and conclusions as to these prongs. Courts in this district routinely dismiss *Monell* claims that rely solely on conclusory allegations. See, e.g., *Washington* 2025 WL 1262569 at **2-4; *Hutton v. City of Chicago*, No. 20 C 3997, 2021 WL 809731, at *3 (N.D. Ill. Mar. 3, 2021) (Valderrama, J.)(collecting cases where Courts in this district have dismissed deficient *Monell* claims). *Jordan v. City of Chicago et al.*, 2021 WL 1962385, 20 C 4012, at *4 (May 17, 2021)(Gottschall, J.)(stating the plaintiff "must do more than plead that the city had a code of silence"); *Harris v. City of Chicago*, 2021 WL 1192438, 20 CV 452 (N.D. Ill. March 30, 2021)(Chang, J.)("Naked assertions devoid

of factual enhancement and formulaic recitations of the elements of a *Monell* claim are all (Plaintiff) has offered").

With no facts whatsoever to support these prongs, they fail as a matter of law. Therefore, Plaintiffs have failed to plead each prong of any *Monell* claims they are asserting and they should be dismissed with prejudice.

## IV. Counts XIX and XXIII Fail as a Matter of Law because the City is Immunized from Liability for Negligence.

In the interest of efficiency, the City addresses Counts XIX (Negligence vs. CPD) and XXIII (NIED vs. CPD) as if pleaded against it. At all times relevant, there was in effect the Tort Immunity Act, 745 ILCS 10/1-101., *et seq.*, which provides at Section 2-202: "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. At all times relevant hereto, there also was and is in effect Section 2-109 of the Tort Immunity Act, which provides: "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109.

"[A] court may, as a matter of law, determine whether a public employee is enforcing a law when the facts alleged support only one conclusion." *Pouk v. Village of Romeoville*, 405 Ill. App. 3d 194, 197 (2010) (citing *Lacey v. Village of Palatine*, 232 Ill. 2d 349, 367 (2009). At Counts XIX and XXVI of their Complaint, Plaintiffs attempt to allege a claims for negligence and NIED against the City for the actions of its officers in interacting with Smith on February 1, 2024.

At all times relevant, these police officers were employed by the City, and their alleged acts or omissions involved the execution and enforcement of the law, *i.e.*, responding to a call for service. Thus, as a matter of law, these officers, and therefore the City, are immune from liability for negligence pursuant to Sections 2-202 and 2-109, respectively, of the Tort Immunity Act, as willful and wanton conduct is required. Therefore, Counts XIX and XXIII should be dismissed with prejudice.

V. **Counts XXVI, XXVIII, and XXIX Fail as a Matter of Law Pursuant to the Illinois Tort Immunity Act.**

Plaintiffs allege that the City owed a "duty to protect victims of domestic violence, enforce protective orders, and take immediate action against known threats" and that the City breached that duty when the officers who responded on February 1, 2024 allegedly failed to take Smith's concerns seriously, failed to enforce a protective order, and failed to arrest Brand. Dkt. No. 2 at ¶¶ 319, 321-323, 328, 359, 360, 368, 384-386.

However, the Illinois Tort Immunity Act offers immunity to municipalities for claims such as this. Indeed, Section 4-102 provides absolute immunity to the City and its officers for "failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." 745 ILCS 10/4-102. Moreover, Section 4-107 provides absolute immunity to the City and Defendant Officers "for an injury caused by the failure to make an arrest." 745 ILCS 10/4-107. Thus, the officers who responded on February 1, 2024, and therefore the City, are absolutely immune from liability, pursuant to Sections 4-102 and 4-107 of the Tort Immunity Act, for their alleged willful and wanton misconduct and their alleged breach of duty.

To the extent Plaintiffs may claim that the more limited immunity provided in 750 ILCS 60/305 (the Illinois Domestic Violence Act) applies because this was an incident involving domestic violence, such an argument would fail. The Illinois Supreme Court considered this exact question in *Lacey v. Village of Palatine*, 232 Ill.2d 349, 904 N.E.2d 18 (2009). In *Lacey*, police officers were made aware of domestic violence and threats to the plaintiff's decedent's life. *Id.* at 353-58, 20-23. Unfortunately, those threats came to fruition and the decedent's estate filed suit against the officers and municipality for failing to protect the decedent from her abuser. *Id.* The Illinois Supreme Court upheld dismissal of the action, finding that Section 4-102 and 4-107 absolute immunity applied because the limited immunity provided when officers are enforcing the domestic violence act was not applicable. *Id.* at 368-69, 29. Notably, the Court found that officers and municipalities cannot be

16

continuously enforcing the domestic violence act and the limited immunity would only apply when officers were actively engaged in enforcement of the act. *Id.* at 361, 25 and 368, 29. Specifically, the Court ruled that "[t]he flaw in plaintiff's claim is that the Act does not impose the kind of general, open-ended duty to protect that plaintiff alleges was breached." *Id.* at 363, 27.

Here, Plaintiffs have not alleged that Chicago police officers were actively enforcing the Illinois Domestic Violence Act on March 13, 2024 and instead have made allegations similar to the *Lacey* plaintiff – a "general, open-ended duty to protect." Therefore, like in *Lacey*, Sections 4-102 and 4-107 provide absolute immunity, and Counts XXVI, XXVIII, and XXIX[4] should be dismissed with prejudice.

## VI. Counts XIX, XXIII, XXVI, XXVIII, and XXIX Fail because they are Unsupported by the Facts.

Regardless of the immunity provided by the Illinois Tort Immunity Act, Plaintiffs' state law claims fail because they are absolutely refuted by the bodyworn camera video and testimony in Brand's criminal case. Plaintiffs' allegations in these counts rely entirely on conclusory statements and the incorrect allegations that (1) Smith had an active order of protection against Brand, (2) Smith told the officers about the active order of protection and threats, (3) officers completely disregarded Smith and her pleas for help, (4) officers failed to arrest Brand when they could have. *See* Dkt. No. 2 at Counts XIX, XXIII, XXVIII, and XXIX. As discussed above, the BWC footage of the incident entirely refutes these allegations.

Moreover, as to the allegations in Count XXVI (IIED) regarding the City's purported refusal to implement reforms and train its officers and that this incident was the result of systemic issues (see paragraphs 324, 326-328), these allegations likewise do not make Plaintiffs' claims plausible as they are

---

[4] Counts XIX and XXIII should be dismissed because negligence claims against the City fail. However, Sections 4-102 and 4-107 would necessarily shield the City from liability from any allegations in these counts relating to the purported failures as well since the immunity is absolute.

completely conclusory. Other than mentioning one after-the-fact other incident, Plaintiffs have provided no facts to support this aspect of their claim. Not to mention how any of those allegations, even if supported by facts, would tend to show that any City actor intended to inflict emotional distress *on Plaintiffs*. See *Pavlik v. Kornhaber*, 761 N.E.2d 175, 186, 326 Ill. App. 731, 743-744 (1st Dist. 2001) (A claim for intentional infliction of emotional distress requires plaintiffs "show… that the actor intended that his conduct inflict severe emotional distress or knew that there was a high probability that his conduct would inflict such distress….").

Plaintiffs have therefore supported these claims with no factual specificity, and they should be dismissed.

## VII.    Count XXX Fails if the Underlying Claims Fail.

Count III is a claim against the City for Indemnification. Because Plaintiff has failed to establish an underlying claim for liability, the Court should dismiss the Indemnification claim against the City as well. *See Baskins v. Gilmore*, 2018 WL 4699847, at *12 (N.D. Ill. Sept. 30, 2018) ("[a]n indemnification claim necessarily will be tied to an underlying claim for liability"); *See also Kirk v. Michael Reese Hosp. & Med. Ctr.*, 117 Ill. 2d 507, 533 (1987)("Where the agent is not guilty, it necessarily follows that the party for whom he acted, the master, cannot be guilty"); 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable"). Therefore, should this Court grant the City's Motion to Dismiss as to Counts IV, VI, XIII, XIX, XXIII, XXVI, XXVIII, and XXIX, this Court should likewise enter judgment in favor of the City on Count XXX.

## <u>CONCLUSION</u>

Plaintiffs' Complaint fails as a matter of law and fact as it pertains to the claims against the City. While the City acknowledges this incident is a tragedy, there is simply no basis in law or fact for the claims alleged against it. For the foregoing reasons, the City respectfully requests that this Court grant its Rule 12(b)(6) Motion to Dismiss, and dismiss the claims against it with prejudice.

Respectfully submitted,

*/s/ Marion C. Moore*
Chief Assistant Corporation Counsel

Marion Moore, Chief Assistant Corporation Counsel
Caroline Fronczak, Deputy Corporation Counsel
City of Chicago, Department of Law
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-5170 (Moore)
Atty. No. 6302566 (Moore)