IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LATERRIA SMITH, as the Independent Administrator of the ESTATE OF JAYDEN D. PERKINS, Deceased, *et al.*, | |
| Plaintiffs, | |
| v. | No. 25 C 4279 |
| CITY OF CHICAGO, *et al.*, | Honorable Sunil R. Harjani |
| Defendants. | |

### **DEFENDANT LATOYA HUGHES' MOTION TO DISMISS**

Defendant Latoya Hughes, the Director of the Illinois Department of Corrections ("the Department"), by her attorney, Kwame Raoul, Attorney General of Illinois, moves to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### **INTRODUCTION**

Plaintiffs sued the Director in her individual capacity, alleging that she personally violated their constitutional rights through her oversight of the Department's parole division staff who allegedly failed to anticipate or prevent a criminal attack on them by a parolee. The harm caused by the parolee was undeniably tragic. But Plaintiffs' attempt to hold the Director in her individual capacity civilly liable for a third party's criminal behavior is fundamentally misguided. The Supreme Court has long recognized that the government does not violate the Constitution when it fails to anticipate and prevent private violence. As a matter of law, the Director did not violate the Constitution or any state law simply because she is the head of the Department. Plaintiffs allege no specific underlying misconduct by the Director or one of her subordinates, nor do they detail any action by the Director that personally implicates her in any decisions regarding a specific parolee. At the very least, the Director is entitled to qualified

immunity because no law clearly established that her position could subject her to liability for the criminal actions of a parolee. Plaintiffs' state-law claims fare no better, for they are barred by state-law sovereign immunity and there can be no state tort liability against the Director based on a parolee's criminal conduct. This Court should dismiss this action against the Director.

## BACKGROUND

Plaintiff Laterria Smith had known Crosetti Brand since high school. Dkt. 45 ¶ 16. They dated, but Smith ended the relationship. ¶ 16. After the breakup, Brand became abusive, to the point where Smith needed to obtain an order of protection. ¶¶ 15–17.

Brand has a long history of domestic violence against women in his life, not just Smith, and he has spent most of his adult life behind bars. ¶ 17. Since 2015, Brand had been incarcerated for a conviction related to attacking another woman, and he was released on Mandatory Supervised Release, which is Illinois's version of parole, in October 2023. ¶ 18. As a condition of parole, Brand was prohibited from contacting his victims, including Smith. ¶ 18. Brand violated that order by threatening Smith in person and sending her written threats. ¶ 19. Smith reported those threats to law enforcement authorities and Brand's parole officer. ¶ 19.

On February 1, 2024, Brand arrived uninvited at Smith's home and attempted to enter. ¶ 20. Smith contacted parole officer "Commander DeYoung" and told him about Brand's attempted contact. ¶ 20.a. Cmdr. DeYoung contacted Brand about the incident, and Brand told the officer that he had been at the home but had only been looking for a new apartment. ¶ 20.b. In a Parole Violation Report dated February 4, 2024, Brand was cited for violating several conditions of parole: contacting one of his victims, failing to allow parole officer visits, failing to comply with required programming and residential placement, and changing his residence or employment without permission. ¶ 20. The report also noted an instance, documented by an

2

"Agent Gardner," where Brand interfered with his GPS monitoring device. ¶ 20. Around that time, Brand was recommitted to the Department's custody.

Smith also contacted other law enforcement officers to report Brand's behavior, and those officers advised that she seek an order of protection. ¶ 22. On January 30, 2024, Smith had sought an order of protection in state court, but the court declined to grant one because Brand was, at that time, in custody for parole violations. ¶ 23. The court scheduled a further hearing for March 13, 2024. ¶ 23.

On February 26, 2024, the Illinois Prisoner Review Board (IPRB) held a parole revocation hearing and ordered that Brand be released on parole. ¶ 24.

On March 12, 2024, at 6:08 p.m., Brand was released on parole. ¶ 25. Minutes later, he began calling Smith from a blocked number. ¶ 25. At 9:49 p.m., Brand took a rideshare to Smith's apartment building and arrived there at 10:10 p.m. ¶ 27. He laid in wait overnight. ¶ 27. The following morning, March 13, Smith opened the door to take her two sons to school and Brand attacked them, stabbing her multiple times and killing her eldest son. ¶ 28.

In August 2025, Brand was convicted of first-degree murder, attempted murder, aggravated domestic battery, and home invasion. ¶ 35. He was sentenced to natural life in prison for his murder conviction and consecutive 60-year sentences for the other convictions. ¶ 35.

Plaintiffs brought this action against the Director, alleging that she is civilly liable for Brand's attack because she "failed in her supervisory duties to monitor Brand, disregarded his repeated parole violations, and ignored his escalating threats." ¶ 3. They allege that the Director "failed to ensure appropriate monitoring and intervention to prevent violations and threats, demonstrating deliberate indifference to known risks." ¶ 12. Plaintiffs bring claims under 42 U.S.C. § 1983 to redress violations of their constitutional rights; they contend that the Director violated those rights based on "supervisory liability" (Count VI) and "failure to protect" (Count

VII), and that she violated the Fourteenth Amendment's substantive due process guarantee by affirmatively creating a dangerous situation that caused the attack (Count VIII). Plaintiffs also assert state-law claims for willful and wanton misconduct (Count IX), negligence (Count X), intentional infliction of emotional distress (Count XI), negligent infliction of emotional distress (Count XII), and wrongful death and survival actions (Counts XIII, XIV). Plaintiff also sued the City of Chicago, alleging that its policies, practices, or customs also allowed Brand to commit criminal acts, and two members of the IPRB, a state entity that is separate from the Department, *see* 730 ILCS 5/3-3-1 *et seq.*, alleging that their parole-related decisions also allowed Brand to commit criminal acts. ¶ 3.

## LEGAL STANDARD

Rule 12(b)(1) permits dismissal of a claim for lack of subject matter jurisdiction. As relevant here, a federal court lacks subject-matter jurisdiction over state-law claims when state-law specifies that those claims must be brought in the Illinois Court of Claims. *See Turner v. Miller*, 301 F.3d 599, 602–03 (7th Cir. 2002). Rule 12(b)(6) allows the dismissal of a complaint for failure to state a claim upon which relief can be granted. In testing the sufficiency of a complaint, all non-conclusory factual allegations are accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations are construed in the light most favorable to the plaintiff and all reasonable inferences are drawn in the plaintiff's favor. *See Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). But legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

ARGUMENT

I. **This Court should dismiss Plaintiffs' federal claims.**

A. **Plaintiffs fail to state a Section 1983 claim against the Director.**

Plaintiffs allege that the Director violated their constitutional rights because she is the head of the Department and her subordinates failed to anticipate or prevent Brand's attack, which occurred hours after his March 2024 release on parole. Plaintiffs do not name any of the Director's subordinates as a defendant, nor do they allege how any unidentified subordinate committed an underlying constitutional violation against them. With no underlying constitutional violation alleged, Plaintiffs cannot and do not otherwise state a constitutional violation by the Director. As a matter of law, Plaintiffs cannot state a claim.

It is well established that Section 1983, the statute used to enforce constitutional rights, does not permit vicarious responsibility on supervisors. *See Iqbal*, 556 U.S. at 676; *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009); *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997). "[S]uch a broad theory of liability is inconsistent with the personal responsibility requirement for assessing damages against public officials in a section 1983 action." *Crowder v. Lash*, 687 F.2d 996, 1006 (7th Cir. 1982). High-ranking officials, therefore, cannot be held liable for damages simply because they have supervisory authority or oversee operations. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (concluding that medical staff supervisor was not liable for subordinate's failure to administer certain medical care where supervisor was "not sufficiently involved" in failure to provide care).

Rather, Section 1983 liability all comes down to *personal* involvement. *See Iqbal*, 556 U.S. at 677; *Est. of Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017); *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017). To state a claim against a supervisor for the misconduct of her subordinates requires that a plaintiff allege that the supervisor (1) knew about the subordinate's

5

conduct and (2) facilitated, approved, condoned, or turned a blind eye toward it. *See Hess v. Garcia*, 72 F.4th 753, 768 (7th Cir. 2023). As to the second point, the supervisor must have "acted purposefully, knowingly, or recklessly"; negligence does not cut it. *Gonzalez v. McHenry Cty., Ill.*, 40 F.4th 824, 828 (7th Cir. 2022); *see also Volk v. Coler*, 845 F.2d 1422, 1432 (7th Cir. 1988).

      Plaintiffs fail to plead any basis to hold the Director liable for a constitutional violation. For starters, Plaintiffs' choice to name only the highest person on the Department's bureaucratic chain of command as a defendant "is a bad one." *Burks*, 555 F.3d at 593. Allegations of misconduct against a supervisor are insufficient when they fail to allege how her subordinates committed the deprivation and who the subordinates were. *See Milchtein v. Milwaukee Cty.*, 42 F.4th 814, 824 (7th Cir. 2022). And here, Plaintiffs do not even try to plead an underlying constitutional violation. Plaintiffs allege that at least two parole officers (Cmdr. DeYoung and Agent Gardner) reported Brand's parole violations. Dkt. 45 ¶ 20. That is the extent of any subordinate's alleged involvement; Brand was recommitted to the Department's physical custody for violating parole. The IPRB—a separate entity from the Department that has the authority to adjudicate alleged parole violations—ordered that Brand be re-released on parole. ¶ 24. Meanwhile, a state-court judge had denied Plaintiff Smith an order of protection on the ground that Brand was in custody. ¶ 23. When Brand was re-released pursuant to the IPRB order, he attacked Plaintiffs within a matter of hours. ¶ 25. In that intervening time between re-release and attack, no Department employee, let alone the Director, is alleged to have committed some misconduct constituting a constitutional violation.

      Nor could there be an underlying violation by a parole officer, for such a claim would run into two significant roadblocks. First, the Constitution does not create a general right to protection from private wrongdoers, such as Brand. *See Castle Rock v. Gonzales,* 545 U.S. 748,

768 (2005); *DeShaney v. Winnebago Cty.,* 489 U.S. 189, 194–202 (1989); *Leeke v. Timmerman,* 454 U.S. 83, 86–87 (1981); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (there is no "judicially cognizable interest in the prosecution or nonprosecution of another"); *Sandage v. Bd. of Comm'rs of Vanderburgh Cty.*, 548 F.3d 595, 596 (7th Cir. 2008) ("There is no federal constitutional right to be protected by the government against private violence in which the government is not complicit."); *Wikberg v. Reich*, 21 F.3d 188, 190 (7th Cir. 1994) (noting dissatisfaction with an investigation and nonprosecution of crimes that may have been committed against an individual are not actionable). Second, parole officers perform tasks that are analogous to those performed by prosecutors, like the decision to issue or not issue warrants for alleged parole violations, and any alleged violations based on those actions are protected by absolute immunity. *See Wilson v. Kelkhoff*, 86 F.3d 1438, 1446 (7th Cir. 1996) (parole official who "mak[es] a probable cause determination in deciding to issue an arrest warrant based on the evidence gathered by others" is entitled to absolute immunity); *Walrath v. United States*, 35 F.3d 277, 282 (7th Cir. 1994) ("issuance of an arrest warrant has several key characteristics in common with a judicial act")); *accord Scotto v. Almenas*, 143 F.3d 105, 110–13 (2d Cir. 1998) (concluding that parole officers were entitled to absolute immunity for both judicial and prosecutorial actions taken in connection with parole revocation hearing). In sum, Plaintiffs allege no underlying constitutional conduct, nor could they allege an underlying constitutional violation, and if there is no underlying constitutional violation to condone, a supervisor "could not be liable in their supervisory capacities." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 479 (7th Cir. 2024).

    The frivolity of a claim against the Director becomes even more apparent when evaluating Plaintiffs' conclusory allegations that she caused a constitutional deprivation based on her failure to oversee the Department's parole services. For example, in *Taylor v. Ways*, 999 F.3d

7

478 (7th Cir. 2021), the Seventh Circuit explained that a supervisor's failure to perform his job well by not catching a subordinate's misconduct does not create Section 1983 liability. There, a sheriff's deputy was fired for having fired a pellet gun at his neighbor, but the deputy suspected it was because of his race. *Id.* 482–83. The deputy sued the investigator who investigated the pellet-gun incident for unconstitutional discrimination, and he sued two supervisors who reviewed and endorsed the investigator's report and recommendation. *Id*. The court concluded that the supervisors were not liable for the investigator's alleged discrimination even though they knew of certain "deficiencies" in the investigator's report: "[a]n allegation that the supervisor had knowledge of a deficiency [in an investigation] is not, without more, enough to maintain an individual liability claim under § 1983." *Id.* at 495. The supervisors' failure to re-do the investigator's work, even after identifying weaknesses in that investigation, did not amount to personal involvement in the investigator's alleged unconstitutional conduct. *Id.* at 495–96.

  Plaintiffs' accusation of poor oversight of parole services is an even more attenuated basis for liability than in *Taylor*, where the supervisors were at least involved in, but oblivious to, a specific subordinate's underlying investigation. Here, Plaintiffs plead no facts that plausibly show that the Director was personally involved in Brand's parole decisions, let alone aware of and involved in any specific parolee's case. Plaintiffs simply assert, in conclusory fashion, that the Director "had actual and constructive knowledge that" Department parole staff "were failing to monitor and enforce parole conditions," based on Brand's prior parole violations that occurred before the IBRP re-released him on parole. Dkt. 45 ¶ 93; *see also* ¶¶ 107, 120, 129, 137, 144, 153, 160, 168 (alleging the Director had "actual and constructive knowledge"). Such conclusory assertions are not entitled to any assumption of truth on a Rule 12(b)(6) motion. *See Iqbal*, 556 U.S. at 679. In fact, Plaintiffs' attempt to infer that the Director has any involvement in any parolee's situation or knowledge of specific risks any parolee may have presented to specific

8

members of the public is facially implausible. The Director oversees a Department that includes 46 correctional facilities, housing nearly 30,000 inmates, and in 2024 there was an average daily parole population of over 17,000.[1] To make matters even more complicated and implausible, Plaintiffs not only allege that the Director caused a constitutional deprivation, but also allege that a municipal policy of the City of Chicago and the IPRB, a state agency that is independent of the Department, *see* 730 ILCS 5/3-3-1(a), caused the same deprivation. The connection or interplay between these three different, independent government entities is never explained and the implication of some conspiracy is baseless.

For these reasons, Plaintiffs do not and cannot state a claim for relief under Section 1983 based on "supervisory liability," a "failure to protect," or otherwise creating a danger. There is no supervisory liability because, as explained above, there is no such thing under Section 1983 and, in any event, Plaintiffs do not allege the Director's participation in an underlying constitutional violation. Likewise, Plaintiff's "failure to protect" claim founders because such a claim requires an underlying constitutional violation and an opportunity to intervene in that underlying harm. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) ("for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation"); *see also Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (state official fails to intervene if she "had reason to know" that a constitutional violation was being committed and had a realistic opportunity to intervene and stop the harm from occurring).

As to Plaintiffs' asserted state-created danger theory, they attempt to blame the Director for affirmatively creating the conditions that turned a potential attack by Brand into an actual

---

[1] Fiscal Year 2024 Annual Report, Illinois Department of Corrections, p. 84, *available at* https://idoc.illinois.gov/content/dam/soi/en/web/idoc/reportsandstatistics/documents/annualreports/FY24-Annual-Report-final.pdf

one. "[A] State's failure to protect an individual against private violence simply does not" violate the Constitution, *DeShaney*, 489 U.S. at 197, but a narrow exception exists where the state creates the conditions that cause harm by third parties, *see Rakes v. Roederer*, 117 F.4th 968, 974 (7th Cir. 2024) (per curiam, op. of Ripple, J.). To apply, the state official must have "affirmatively placed the individual in a position of danger the individual otherwise would not have faced," the "failure to protect him from that danger was the proximate cause of his injury," and "the state [official]'s failure to protect the plaintiff must shock the conscience." *Id.* 974 (cleaned up; citation and quotation omitted). As with all Section 1983 claims, a state actor is still only liable for state-created dangers in which she personally participated in creating. *Id*. The Seventh Circuit has recognized the application of this exception in only a few instances, including one where police arrested a women in a safe area and released her in an exceptionally high crime area, *Paine v. Cason*, 678 F.3d 500, 510–11 (7th Cir. 2012), and another situation where police arrested a driver of a car and gave the keys to the drunk passenger, *Reed v. Gardner*, 986 F.2d 1122, 1127 (7th Cir. 1993).

 Because there are no allegations of the Director's personal involvement in any parole-enforcement decisions, she cannot be said to have done "something that turned a potential danger into an actual one," let alone "stood by and did nothing to prevent private violence." *Doe v. Vill. of Arlington*, 782 F.3d 911, 917 (7th Cir. 2015). The Director is not alleged to have "affirmatively" placed Plaintiffs in any situation, much less a position of danger, vis-à-vis Brand. The IPRB, not any Department staff, ordered that Brand be released on parole, and Plaintiffs allege no conduct by Brand that would have alerted any Department employee or the Director of his actions or plans in the hours following his release. If Plaintiffs' theory were correct, the Director would be personally responsible for any harm to the public caused by any parolee; that is untenable. There is no basis to hold the Director liable for any constitutional violation.

### B. The Director is at least entitled to qualified immunity.

The Director is at least entitled to qualified immunity. A state official, like the Director, is entitled to qualified immunity from Section 1983 claims unless (1) she violated federal law and (2) her conduct violated clearly established law at the time. *See Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). If either question is answered in the negative, qualified immunity attaches. *See Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019). Courts have discretion to decide which prong of qualified immunity to address first. *See Pearson v. Callahan*, 555 U.S. 223, 236–43 (2009). Once a defendant raises qualified immunity, the plaintiff has the burden to defeat it. *See Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021).

As explained above, Plaintiffs have not alleged facts demonstrating a constitutional violation by the Director. As to the second prong of the qualified immunity analysis, Plaintiffs cannot meet their burden to show that the Director, based on her alleged actions, violated clearly established law. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To be clearly established, existing precedent must have placed the question beyond debate, *see Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–6 (2021), in that it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right," *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up). Broad, general propositions of law do not suffice. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). There is no case that establishes that the Director violates the Constitution where a parolee commits a criminal act against third parties, no parole officers are alleged to have committed a constitutional violation related to that parolee's actions, and the extent of the Director's involvement is that she is the head the state agency that oversees parole services.

11

**II.      If this Court exercises supplemental jurisdiction of the state-law claims, those claims should be dismissed.**

If this Court exercises supplemental jurisdiction over Plaintiffs' state-law claims against the Director, *see Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999), those claims should be dismissed because the Director is immune from all state-law claims and Plaintiffs have alleged no violation of state law.

**A.      All state-law claims are barred by the State Lawsuit Immunity Act.**

Plaintiffs' state-law claims against the Director are barred by Illinois sovereign immunity rules. *See Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 779 (7th Cir. 1991) ("state rules of immunity are binding in federal court with respect to state causes of action"). The State Lawsuit Immunity Act provides that "[t]he State of Illinois shall not be made a defendant or party in any court," subject to certain exceptions not applicable here. 745 ILCS 5/1. Instead, the Illinois Court of Claims has exclusive jurisdiction over "[a]ll claims against the State founded upon any law of the State of Illinois." *Id.* § 505/8(a).

Illinois' immunity extends not only to suits against a State agency, but also to state employees sued in their individual capacities where there are (1) no allegations that the state employee "acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State." *T. S. v. Cty. of Cook, Ill.*, 67 F.4th 884, 892 (7th Cir. 2023) (quoting *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990)) (internal quotations omitted); *see also Welborn v. Truitt*, No. 24 C 3165, 2025 WL 904330, at *3 (N.D. Ill. Mar. 25, 2025) (dismissing willful and wanton negligence, wrongful death, and survival claims against state employee under State Lawsuit Immunity Act). A personal-capacity suit

12

against a state employee also is barred where a judgment against her "could operate to control the actions of the State or subject it to liability." *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992).

The alleged predicate for Plaintiffs' state-law claims against the Director place them comfortably under the State Lawsuit Immunity Act. Plaintiffs allege that the Director failed to perform her state employment duties well, and there is no allegation that she acted for a purpose unrelated to her job. Plaintiffs' primary complaint is a buck-stops-here theory of liability against the Director that rests entirely on the fact that she is the head of the Department. Thus, even if the Director committed a tort "while on the job," *Linke v. Baits*, No. 23 C 50370, 2025 WL 2689922, at *6 (N.D. Ill. Sept. 19, 2025), which is all that Plaintiffs attempt to assert here, any tort claim is barred and must be brought in the Illinois Court of Claims. *See Turner*, 301 F.3d at 602–03 (district court lacked subject matter jurisdiction over state-law claim barred by state-law sovereign immunity). On this basis, if this Court exercises supplemental jurisdiction over the state-law claims, those claims should nevertheless be dismissed for lack subject-matter jurisdiction.

      **B.**      **Plaintiffs do not state viable state-law claims.**

Finally, putting immunity aside, Plaintiffs do not allege any viable state-law claim. Plaintiffs bring state-law claims for willful and wanton misconduct (Count IX), negligence (Count X), intentional infliction of emotional distress (Count XI), negligent infliction of emotional distress (Count XII), and wrongful death and survival actions (Counts XIII, XIV). At root, these state-law torts all require, with varying degrees of culpability, a plaintiff to show that the defendant owed a duty to the plaintiff, the defendant breached that duty, the breach proximately caused plaintiff's injury, and damages. *See, e.g.*, *Doe v. Coe*, 135 N.E.3d 1, 12 (Ill. 2019) (negligence); *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 58, 63 (Ill. 2016) (negligent and intentional infliction of emotional distress); *W. Bend Mut. Ins. Co. v. Cmty. Unit*

13

*Sch. Dist. 300*, 193 N.E.3d 266, 278 (Ill. App. Ct. 2021) (gross negligence/willful and wanton misconduct); *Rodgers v. Cook Cty.*, 998 N.E.2d 164, 171–72 (Ill. App. Ct. 2013) (explaining Wrongful Death Act and Survival Act).

The alleged predicate for these state-law claims, like the Section 1983 claims, is that the Director failed to take some official action to have Brand recommitted to the Department's custody after being released on parole by the IPRB (despite not alleging a basis or opportunity to do so) and prevent his attack on Plaintiffs. "Generally speaking, Illinois law does not impose a duty to protect another from a criminal attack by a third person unless the attack is reasonably foreseeable and the parties stand in one of four 'special relationships,'" which are inapplicable here, or a defendant voluntarily undertook a duty to protect the plaintiff. *Hernandez v. Rapid Bus Co.*, 641 N.E.2d 886, 890 (Ill. App. Ct. 1994).

Here, Plaintiffs seem to allege that the Director voluntarily undertook a duty to protect them "[b]y assuming supervisory authority over Brand's parole." Dkt. 45 ¶ 106. Plaintiffs do not and cannot plead any facts to establish that the Director voluntarily undertook such a duty. Plaintiffs, again, rest on the fact that the Director is the head of the Department, but her mere job title does not, by operation of law, show that she voluntarily undertook a duty to protect the public, let alone Plaintiffs, from one specific parolee. Plaintiffs supply no factual allegations showing that the Director knew who Plaintiffs were, knew about Brand and the specific risks he posed to Plaintiffs, and then undertook a duty to protect the Plaintiffs from any criminal attack by Brand that might occur. Plaintiffs fail to allege any state-law tort.

## CONCLUSION

For these reasons, this Court should dismiss this action.

Dated: December 1, 2025                               Respectfully submitted,

KWAME RAOUL                                           LATOYA HUGHES, Director of the Illinois
Attorney General of Illinois                          Department of Corrections,

Aaron T. Dozeman (IL 6308909)                         By: s/ Aaron T. Dozeman
Senior Assistant Attorney General                         Senior Assistant Attorney General
Office of the Illinois Attorney General
Government Representation Division
General Law Bureau
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000
Aaron.Dozeman@ilag.gov

15