**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LATERRIA SMITH, as the Independent Administrator of the ESTATE OF JAYDEN D. PERKINS, Deceased, *et al.*, | |
| *Plaintiffs*, | Case No. 25-cv-04279 |
| *v.* | Judge Sunil R. Harjani |
| ILLINOIS PRISONER REVIEW BOARD, *et al.*, | |
| *Defendants*. | |

**DEFENDANT CITY OF CHICAGO'S RULE 12(b)(6) MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant City of Chicago ("City") by one of its attorneys, Marion C. Moore, Chief Assistant Corporation Counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to dismiss Plaintiffs' First Amended Complaint for failure to state a claim. In support of this motion, the City states as follows:

**INTRODUCTION**

Plaintiff Laterria Smith and her children were the unfortunate victims of a violent and deadly act of domestic violence committed by a private citizen named Crosetti Brand on March 13, 2024. Plaintiff's First Amended Complaint, Docket ("Dkt.") No. 45, at ¶¶ 9, 12. Mr. Brand showed up at Plaintiffs' apartment on that date and stabbed both Smith and her older child, tragically killing him, all in front of Smith's other minor child. *Id.*

Plaintiffs bring multiple claims against multiple defendants as a result of this horrific ordeal. Specifically as to the City of Chicago, Plaintiff's claims are as follows: Section 1983 "State Created Danger" (Count I), Section 1983 *Monell* Liability (Count II), Willful and Wanton Misconduct (Count III), Wrongful Death (Count IV), and Survival Action (Count V).

Plaintiffs' First Amended Complaint is an attempt to hold the City liable for a violent act committed by a private citizen who has no affiliation with the City. As discussed more fully below, the law is clear that such liability can only occur in very limited circumstances, none of which are present here. Moreover, Plaintiffs have not put forth sufficient facts to support any claims. What happened to Smith and her children is tragic, to be sure, but there is no legal or factual foundation for Plaintiffs' claims against the City. Counts I, II, III, IV, and V should therefore be dismissed with prejudice.

## STATEMENT OF FACTS

Plaintiffs' factual allegations regarding the City's conduct in this case are sparse, to say the least. Plaintiffs' overarching claim against the City is that it "maintained policies and customs that systematically failed to protect domestic violence victims, with officers refusing to act on Smith's reports of Brand's violations and threats." *Id.* at ¶ 3. In support, Plaintiffs allege, in conclusory fashion, that "[e]ach Defendant had actual knowledge of the escalating threats posed by Crosetti Brand…and failed to take reasonable steps to protect this family." *Id.* at ¶ 2.

As to the City, Plaintiffs allege that its agents "failed to protect domestic violence victims, including the failure to arrest Brand despite knowledge of his threats and violations. *Id.* at ¶ 11. Plaintiffs further allege that "*law enforcement*, parole officials, and public records all were warned of [Brand's] escalating threats toward Laterria Smith" and that Brand made multiple threats which Smith "reported to *law enforcement authorities* and his parole officer." *Id.* at ¶¶ 15, 19 (emphasis added). Notably, when describing the one instance in which Plaintiffs allege an actual interaction and a report made by Smith – the February 1, 2024 incident – Plaintiffs do not even mention a report to the Chicago Police Department. See *Id.* at ¶ 20. Plaintiffs go on to vaguely allege "Smith also contacted *law enforcement* to report Brand violating his parole conditions, stalking her, harassing her, and attempting to break into her home, but the officers refused to take a formal report or arrest Brand, instead telling Smith to go

2

to court for a protective order." *Id.* at ¶ 22 (emphasis added).

Plaintiffs claim that the City "had actual and constructive knowledge" of Brand's history of violence, Smith's reports of Brand's escalating threats and attempted forced entry to her home on February 1, 2024 and that despite that knowledge "CPD officers affirmatively chose not to arrest Brand for trespass, harassment, or stalking, but instead told Smith to 'go to court,'" *Id.* at ¶¶ 42, 43. Plaintiffs then seem to imply that if Brand was arrested on February 1, 2024, then he would not have been able to commit the heinous criminal acts on March 13, 2024. *Id.* at ¶¶ 48, 63.

Despite the repeated allegations that the City somehow had knowledge of the interactions between Brand and Smith and failed to arrest Brand, Plaintiffs do not include a single allegation that Smith ever made a report to the *Chicago Police Department*, let alone when it was made, what Smith said, and the specifics of how any City employee responded.

As to their *Monell* claim, Plaintiffs provide a conclusory list of purported failures, devoid of any factual support, and provide vague allegations regarding three instances of domestic violence against other women. *Id.* at ¶¶ 56, 57. As discussed more fully below, these allegations do not suffice and the claims against the City should be dismissed.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that, when accepted as true, will state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff's statement of claims requires more than labels, conclusions, or a recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. The Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff, *Chancey v. Suburban Bus Division*

3

*of Regional Transportation Authority*, 52 F.3d 623, 626-27 (7th Cir. 1995), but may disregard a complaint's "inconceivable" allegations. *Atkins v. City of Chicago*, 631 F.3d 823, 830 (7th Cir. 2011).

## ARGUMENT

Plaintiffs' claims fail for multiple reasons. First, Counts I and II fail because Plaintiffs did not suffer a constitutional violation and have not made out a constitutional claim. Second, any *Monell* claims also fail because Plaintiffs do not sufficiently allege the existence of a widespread practice, deliberate indifference on the part of a final policymaker, or moving force. Third, the Illinois Tort Immunity Act provides immunity from liability as to Counts III, IV, and V. Fourth, immunity aside, the state law claims are completely unsupported by facts.

## II.    Plaintiffs' Federal Claims in Counts I and II Fail as a Matter of Law.

Plaintiffs have not alleged a violation of their constitutional rights committed by any City employee acting under color of law. Their federal claims therefore fail as a matter of law. Because this is their second attempt at pleading a constitutional claim against the City, these claims should be dismissed with prejudice.

At the outset, the City notes that Counts I and II are duplicative in that they are claims solely against the City and based on the same set of circumstances. Indeed, Count I appears to invoke *respondeat superior* liability, instead of *Monell* liability, and should therefore be dismissed. Local governments "may not be sued under §1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). This type of liability would constitute *respondeat superior*, or vicarious liability, which is not permitted. *Jenkins v. Bartlett*, 487 F.3d 482, 492 (2007). Instead, a municipality "may only be liable for constitutional violations caused by the municipality itself through its own policy or custom." *Id.* Therefore, to the extent Count I is a claim for vicarious liability, it should be dismissed. To the extent it is read to be an additional *Monell* claim, it should be dismissed, along with Count II, for the reasons discussed below.

Counts I and II appear to be premised on an alleged violation of 14th Amendment Due Process, with Count I titled as "State-Created Danger" and Count II being a *Monell* claim premised on these same failures and injuries. Thus, the first question here is whether Plaintiffs have plausibly alleged a violation of their constitutional rights. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986-87 (7th Cir. 2021); *See also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012). The answer is clearly no. Moreover, lack of constitutional violation aside, Counts I and II should also be dismissed because Plaintiffs have not adequately pleaded the other elements of a *Monell* claim.

### a. Plaintiffs have not established a constitutional violation.

It is well settled that a plaintiff cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation. *First Midwest Bank*, 988 F.3d at 986-87. Plaintiffs appear to be claiming the City violated their rights when Mr. Brand forced his way into their apartment and committed his horrible crime. But purely private misconduct, which is what is alleged here, cannot violate those rights. *First Midwest Bank*, 988 F.3d at 983 ("it has long been settled that 'a State's failure to protect an individual against private violence ... does not constitute a violation of the Due Process Clause'")(*quoting DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)).

In *DeShaney*, Joshua DeShaney sought to hold the county liable under *Monell* for purely private misconduct – there, brutal child abuse by his father – on the ground that the county had promulgated deficient policies that deprived him of his Fourteenth Amendment right to Due Process. *Deshaney*, 489 U.S. at 193. The Supreme Court held that Joshua suffered no constitutional violation because "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195. The purpose of due process is "to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196. Thus, due process "generally confer[s] no affirmative right to governmental aid, even where

5

such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* For that reason, "the State cannot be held liable under the [Due Process] Clause for injuries that could have been averted had it chosen to provide" such aid. *Id.* at 196-97. And because Joshua suffered no constitutional violation in the first place, the Court explained, his constitutional claim failed, *id.* at 202, making it unnecessary to consider "whether the allegations in the complaint are sufficient to support a § 1983 claim against the county and DSS under *Monell*," *id.* at 202 n.10.

After *DeShaney*, there are only two circumstances in which the government may be held liable for failing to prevent private misconduct: (1) when the plaintiff was in government custody; or (2) the government engaged in conscience-shocking misconduct that created or increased the danger to a particular, foreseeable plaintiff rather than the general public. *See Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827-28 (7th Cir. 2009); *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998).

Here, Plaintiffs are proceeding under the second circumstance mentioned above, the so-called "state-created danger" theory. This second circumstance is difficult to allege because it is extremely narrow, if even viable. *See, e.g., Jaimes v. Cook County*, 2022 WL 2806462 at *3 (7th Cir. 2022)("We have stressed that liability under the state-created danger theory has only been found under 'rare and often egregious' circumstances")(citations omitted); *Weiland v. Loomis*, 938 F.3d 917, 918 (7th Cir. 2019)(expressing doubt about whether state-created danger is a proper exception to *DeShaney*); Marsh v. Caruana, 2022 WL 17038962 at *4 (N.D. Ill. November 17, 2022)(Reinhard, J.)(noting the Seventh Circuit's "doubt about whether this exception was appropriately derived from *DeShaney*). Indeed, in *Weiland*, the Seventh Circuit exhibited doubt over whether the "state-created danger" theory can be reconciled with *DeShaney* and explained that cases finding "liability outside of prisons when the state has disabled or undermined self-help or sources of private assistance" "have a footing in *DeShaney*" that the "test" described below "lacks." 938 F.3d at 920-21.

Even operating on the idea that the "state-created danger" theory is appropriate under *Deshaney*, the facts alleged here do not support a "state created danger" theory in this case. As the Seventh Circuit has expressed,

> [t]he *DeShaney* exception for state-created dangers is narrow. A plaintiff must show that the state affirmatively placed him in a position of danger and that the state's failure to protect him from that danger was the proximate cause of his injury. To satisfy the proximate-cause requirement, the state-created danger must entail a foreseeable type of risk to a foreseeable class of persons. A generalized risk of indefinite duration and degree is insufficient. Finally, because the right to protection against a state-created danger arises from the substantive component of the Due Process Clause, the state's failure to protect the plaintiff must shock the conscience.

*First Midwest Bank*, 988 F.3d at 988-89 (citations omitted). Plaintiffs do not meet this standard. Plaintiffs do not adequately allege an affirmative act by a City employee nor conscience-shocking behavior. Additionally, Plaintiffs do not adequately allege cause-in-fact. Therefore, Plaintiffs fail to state a constitutional claim and Counts I and II should be dismissed.

### i. *No City actor took an affirmative act that created or increased danger to Plaintiffs.*

This case is akin to *Deshaney*, and does not fit into the "state-created danger" exception. First of all, Plaintiffs have not alleged a single act taken by a City of Chicago employee, referring only to reports to "law enforcement" without any factual enhancement. While Plaintiffs allege that the City should have arrested Brand on February 1, 2024, Plaintiffs provide no details whatsoever as to how this could be so. Plaintiffs do not explain any encounter with Chicago Police officers on February 1, 2024. They provide no factual details whatsoever about any purported call to the Chicago Police, what was said, what was happening when officers arrived, or what the response was.[1] They solely state, in

---

[1] Perhaps this is because they are attempting to avoid incorporating the bodyworn camera ("BWC") video of the incident, as they did with their initial Complaint. *See* Defendant City of Chicago's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Complaint, Dkt. No. 37, at pp. 3-7. Indeed, as discussed at length in the City's Motion to Dismiss the initial complaint, BWC video of an encounter between Ms. Smith and Chicago Police officers on February 1, 2024 completely contradicts and undercuts Plaintiffs' claims in this matter. While the City stands by its position in Dkt. No. 37 that the BWC video of the encounter nullifies Plaintiffs' claims, the City does not make that argument here as it could not reasonably be argued, based on the minimal allegations in the First Amended Complaint, that the BWC video was incorporated by reference.

conclusory fashion, that "CPD officers affirmatively chose not to arrest Brand for trespass, harassment, or stalking, but instead directed Smith to 'go to court,' abandoning their responsibility to intervene." Dkt. No. 45, at ¶ 43. This is insufficient.

Second, even with what can be surmised from the vague allegations in this First Amended Complaint (and the allegations contained in the initial Complaint) - that Chicago police officers interacted with Plaintiffs on February 1, 2024, did not do enough to protect them, and failed to arrest Brand – this does not plausibly lend itself to a constitutional violation. Any response on February 1, 2024 did not "affirmatively" put Plaintiffs in danger on March 13, 2024 and Plaintiffs have not alleged an affirmative act taken by a City actor that affirmatively placed them in a position of danger. Moreover, Plaintiffs even specifically pled an intervening factor: that Brand turned himself in and had an entire parole hearing in that time-frame. *Id.* at ¶¶ 20, 21, 24-28.

Plaintiffs merely allege a purported failure to act that did not change the alleged status quo (Crosetti Brand harassing them). The case law supports dismissal in such a situation. *See, e.g., Arriaga v. Dart*, 2021 WL 308829 (N.D. Ill. 2021)(allegations that supervisors took affirmative act of disclosing transgender identity of plaintiff to other employees, who in turn harassed her); *Estate of Her v. Hoeppner*, 939 F.3d 872 (7th Cir. 2019)(affirming summary judgment where operation of swimming pond did not create or increase the danger to plaintiff's decedent); *Monfils v. Taylor*, 165 F.3d 511, 518 (7 Cir. 1998)(upholding jury verdict where officer increased danger to plaintiff's decedent by failing to prevent release of tape of anonymous call); *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979)(state created a danger by arresting driver/uncle and leaving children on the side of the road in a vehicle); *Flint v. City of Belvidere*, 791 F.3d 764, 770 (7th Cir. 2015)(disclosure of confidential informant's identity not the cause-in-fact of his murder); *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993)(potential state-created danger when officers arrest sober driver and in effect allow a drunk driver to get behind the wheel). Moreover, given the sparse factual details, Plaintiffs certainly have not alleged conscience-

shocking behavior by any Chicago police officer or City actor. Therefore, Plaintiffs have not sufficiently alleged a constitutional violation.

*ii.* *Plaintiffs have not sufficiently alleged causation.*

Plaintiffs' constitutional claims also fail as a matter of law because they have failed to plausibly allege that any widespread custom or the act of any City employee were the cause of their injuries. Because Section 1983 was "enacted against a background of common law tort principles governing causation," those principles are generally "applicable to federal civil-rights cases." *Taliferro v. Augle*, 757 F.2d 157, 161-62 (7th Cir. 1985). Moreover, *Monell* liability requires "a direct causal connection" between an alleged policy and a plaintiff's injuries, *J.K.J. v. Polk Cty.*, 928 F.3d 576, 599 (7th Cir. 2019). It must also be noted that "[t]hough recent cases only include *proximate* cause (which hinges on foreseeability) as an element, it is well-established that recovering damages for a constitutional tort also requires causation in fact—'i.e., that the defendant caused the claimed injury." *Flint v. City of Belvidere*, 791 F.3d 764, 770 (7th Cir. 2015)(quoting *Beard v. O'Neal,* 728 F.2d 894, 898–99 (7th Cir.1984)(other citations omitted).

Here, Plaintiffs essentially allege that had the officers on February 1, 2024 arrested Brand, the incident on March 13, 2024 would not have happened. Not only is that unsupported speculation that need not be accepted, but this causal connection has a fatal flaw: Plaintiffs also allege that Brand turned himself in on a parole violation and sent back to prison, only to be released after a hearing in front of the Illinois Prisoner Review Board. Dkt. No. 45 at ¶¶ 20, 21, 24-28. And Plaintiffs have made no factual allegations whatsoever that Smith or Brand had any contact with a City actor between February 1, 2024 and March 13, 2024. Causation is a requirement for the claims Plaintiffs bring in this suit. Under this factual scenario, there are no allegations Plaintiffs could put forth that would create a plausible inference that any City action was the cause of their injuries. Therefore, Plaintiffs have not stated a valid constitutional claim and Counts I and II should be dismissed.

**b.** **Counts I and II also fail because Plaintiffs have not sufficiently alleged widespread policy, deliberate indifference, or moving force.**

Even if this Court finds that Plaintiffs have sufficiently alleged a violation of their constitutional rights (which it should not), the federal claims against the City still fail because Plaintiffs have not sufficiently alleged the other elements of a *Monell* claim. A plaintiff may seek to hold a municipality liable in three ways: because of an express policy that causes a constitutional injury when enforced, a widespread practice so permanent and well-settled that it constitutes a custom or practice; or the direct acts of a final policymaker. *First Midwest Bank*, 988 F.3d at 987. In the case of an allegation of a widespread practice, as Plaintiffs allege here, a plaintiff must meet three elements. First, they must show the existence of the widespread practice; then they must show deliberate indifference to the alleged practice, and finally show that the practice was the moving force behind the constitutional injury. *Id.*

To state a custom and practice *Monell* claim, a plaintiff must plead factual content to allow the court to draw the reasonable inference that the City maintains the problematic policy or practice in question. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681). This entails "provid[ing] some **specific facts** to support the legal claims asserted in the complaint." *Id.*; *see also, e.g., Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (emphasis added). Although the specificity of these facts is not easily quantified, it must be "enough detail about the subject-matter of the case to present a story that holds together." *McCauley*, 671 F.3d at 616. Plaintiff has failed to do so. Here, Plaintiffs have mostly relied upon Smith's February 1, 2024 experience. But Chief Judge Kendall recently opined:

> To successfully plead a "widespread practice" claim, Plaintiff must allege facts showing that **at least more than one instance** of the alleged conduct occurred to establish that a practice in fact exists and that [plaintiff]'s allegedly unconstitutional arrest was not merely a random event. . . . . **Plaintiff may rely on incidents relating only to him**, . . . **but he still must allege multiple such incidents** such that the Court can draw the reasonable inference that the alleged practice was "so permanent and well

settled" as to constitute custom with the force of law. **Plaintiff fails to identify a single other instance.**

*Alcorn v. City of Chicago*, 17 C 5859, 2018 WL 3614010, at *17 (N.D. Ill. July 27, 2018) (Kendall, J.) (emphasis added) (citing *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Even more recently, Chief Judge Kendall dismissed a similarly deficient *Monell* claim, stating "[w]ith a single incident and no surrounding context, [plaintiff's] *Monell* claim fails to cross the line from conceivable to plausible." *Washington*, *v. City of Chicago*, No. 24 C 12842, 2025 WL 1262569 at *4 (N.D. Ill. May 1, 2025)(Kendall, C.J.). This is the widely accepted standard for "widespread practice" *Monell* claims.

Here, Plaintiffs make mention of three other incidents with no factual specificity about said incidents, only conclusory statements. Dkt. No. 45 at ¶ 57. As to these three incidents, Plaintiffs outline tragic incidents, to be sure, but do not provide any factual detail as to how the Chicago Police Department or any Chicago Police officer allegedly engaged in misconduct. Aside from making vague allegations relating to February 1, 2024 and conclusory allegations relating to three other domestic violence situations, Plaintiffs provide nothing more than conclusory statements relating to purported policies and practices. *See, e.g.*, Dkt. No. 45 at ¶¶ 55, 56, 58, 59. These conclusory allegations do not need to be accepted as true and do not make it plausible that such a widespread practice existed in March 2024. Therefore, Plaintiffs have not alleged a widespread practice.

Nor have Plaintiffs pleaded with any factual specificity that a policymaker was deliberately indifferent to this widespread practice or that this practice was the moving force of the conduct here. Indeed, Plaintiffs provide only buzzwords and conclusions as to these prongs. Courts in this district routinely dismiss *Monell* claims that rely solely on conclusory allegations. See, e.g., *Washington* 2025 WL 1262569 at **2-4; *Hutton v. City of Chicago*, No. 20 C 3997, 2021 WL 809731, at *3 (N.D. Ill. Mar. 3, 2021) (Valderrama, J.)(collecting cases where Courts in this district have dismissed deficient *Monell* claims). *Jordan v. City of Chicago et al.*, 2021 WL 1962385, 20 C 4012, at *4 (May 17, 2021)(Gottschall, J.)(stating the plaintiff "must do more than plead that the city had a code of silence"); *Harris v. City of*

*Chicago*, 2021 WL 1192438, 20 CV 452 (N.D. Ill. March 30, 2021)(Chang, J.)("Naked assertions devoid of factual enhancement and formulaic recitations of the elements of a *Monell* claim are all (Plaintiff) has offered").

With no facts whatsoever to support these prongs, they fail as a matter of law. Therefore, Plaintiffs have failed to plead each prong of any *Monell* claims they are asserting and they should be dismissed with prejudice.

## III.  Counts III, IV, and V Fail Pursuant to the Illinois Tort Immunity Act.

Plaintiffs allege that the City owed a "duty to exercise reasonable care in developing and enforcing policies and practices concerning domestic violence response, protection of known victims, and prevention of foreseeable harm" and that the City breached that duty by failing to arrest Brand, instructing Smith to get a protective order, failing to coordinate with IDOC regarding Brand's escalating violations, maintaining a policy of non-enforcement, failing to train and discipline officers, and maintaining policies that did not require officers to arrest domestic violence perpetrators. Dkt. No. 45 at ¶¶ 68, 71, 78, 86.

However, the Illinois Tort Immunity Act offers immunity to municipalities for claims such as this. Indeed, Section 4-102 provides absolute immunity to the City and its officers for "failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." 745 ILCS 10/4-102. Moreover, Section 4-107 provides absolute immunity to the City and Defendant Officers "for an injury caused by the failure to make an arrest." 745 ILCS 10/4-107. Thus, the officers who responded on February 1, 2024, and therefore the City, are absolutely immune from liability, pursuant to Sections 4-102 and 4-107 of the Tort Immunity Act, for their alleged willful and wanton misconduct and their alleged breach of duty.

To the extent Plaintiffs may claim that the more limited immunity provided in 750 ILCS 60/305 (the Illinois Domestic Violence Act) applies because this was an incident involving domestic

violence, such an argument would fail. The Illinois Supreme Court considered this exact question in *Lacey v. Village of Palatine*, 232 Ill.2d 349, 904 N.E.2d 18 (2009). In *Lacey*, police officers were made aware of domestic violence and threats to the plaintiff's decedent's life. *Id.* at 353-58, 20-23. Unfortunately, those threats came to fruition and the decedent's estate filed suit against the officers and municipality for failing to protect the decedent from her abuser. *Id.* The Illinois Supreme Court upheld dismissal of the action, finding that Section 4-102 and 4-107 absolute immunity applied because the limited immunity provided when officers are enforcing the domestic violence act was not applicable. *Id.* at 368-69, 29. Notably, the Court found that officers and municipalities cannot be continuously enforcing the domestic violence act and the limited immunity would only apply when officers were actively engaged in enforcement of the act. *Id.* at 361, 25 and 368, 29. Specifically, the Court ruled that "[t]he flaw in plaintiff's claim is that the Act does not impose the kind of general, open-ended duty to protect that plaintiff alleges was breached." *Id.* at 363, 27.

Here, Plaintiffs have not alleged that Chicago police officers were actively enforcing the Illinois Domestic Violence Act on March 13, 2024 and instead have made allegations similar to the *Lacey* plaintiff – a "general, open-ended duty to protect." Therefore, like in *Lacey*, Sections 4-102 and 4-107 provide absolute immunity, and Counts III, IV, and V should be dismissed with prejudice.

## IV.     <u>Counts III, IV, and V Fail because they are Unsupported by Facts.</u>

Regardless of the immunity provided by the Illinois Tort Immunity Act, Plaintiffs' state law claims fail because they are unsupported by any factual allegations. Plaintiffs' allegations in these counts rely entirely on conclusory statements and vague allegations that Chicago police officers should have arrested Brand. *See* Dkt. No. 45 at Counts III, IV, VI. Plaintiffs include no factual allegations regarding what occurred in any interaction with Chicago police officers, nor do they include any factual allegations to support their claims that the City fails to train or maintains the policies alleged. As

discussed above, the sparse facts simply do not support the claims they bring. Plaintiffs have therefore supported these claims with no factual specificity, and they should be dismissed.

## **CONCLUSION**

Plaintiffs' First Amended Complaint fails as a matter of law and fact as it pertains to the claims against the City. While the City acknowledges this incident is a tragedy, there is simply no basis in law or fact for the claims alleged against it. For the foregoing reasons, the City respectfully requests that this Court grant its Rule 12(b)(6) Motion to Dismiss, and dismiss the claims against it with prejudice.

Respectfully submitted,

*/s/ Marion C. Moore*
Chief Assistant Corporation Counsel

Marion Moore, Chief Assistant Corporation Counsel
Caroline Fronczak, Deputy Corporation Counsel
City of Chicago, Department of Law
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-5170 (Moore)
Atty. No. 6302566 (Moore)

14