**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LATERRIA SMITH, as the Independent Administrator of the ESTATE OF JAYDEN D. PERKINS, Deceased, *et al.*, | |
| Plaintiffs, | No. 25 C 4279 |
| v. | Honorable Sunil R. Harjani |
| ILLINOIS PRISONER REVIEW BOARD, *et al.*, | |
| Defendants. | |

**LEANN MILLER AND DONALD SHELTON'S MEMORANDUM
<u>IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

*INTRODUCTION*...................................................................................................*1*

*BACKGROUND* ....................................................................................................*2*

*ARGUMENT* .........................................................................................................*3*

**I. This Court should dismiss all Section 1983 claims against the Board Members pursuant to Fed. R. Civ. P. 12(b)(6).** ..........................................................**3**

   A. Absolute immunity protects the Board Members. ................................................3

   B. Plaintiffs' claims cannot proceed as a matter of law for additional reasons. ......................5

      1. Plaintiffs fail to plead sufficient facts to state a failure to protect claim. ......................5

      2. Plaintiffs also do not state any failure to intervene claim. ...........................................10

      3. The Board Members are entitled to qualified immunity. ...............................................11

      4. Plaintiffs' *respondeat superior* claims against Defendant Shelton fail because there is no supervisory liability under Section 1983. ..........................................................................12

**II. Plaintiffs' state-law claims are also legally insufficient and should be dismissed......** **12**

   A. Quasi-judicial immunity bars Plaintiffs' state-law claims against the Board Members. ....12

   B. Sovereign immunity bars Plaintiffs' state-law claims. ..........................................13

   C. Public official immunity bars Plaintiffs' state-law claims. .....................................14

   D. Plaintiffs fail to state a violation of state law against the Board Members. ......................15

      1. Plaintiffs cannot state claims for negligence or willful and wanton conduct. .............15

      2. Plaintiffs have not stated a claim for intentional infliction of emotional distress.......16

      3. Plaintiffs have not stated a Wrongful Death Act and Survival Act claim. .................17

*CONCLUSION*............................................................................................... *18*

## TABLE OF AUTHORITIES

**Cases**

*Aboufariss v. City of DeKalb*, 713 N.E.2d 804 (1999) ............................................................14

*Amos v. Lane*, 605 F. Supp. 775 (N.D. Ill. 1985) ....................................................................8

*Bedford v. Dewitt*, 695 F. Supp. 3d 998 (N.D. Ill. 2023) .......................................................12

*Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775 (7th Cir. 1991) ........................13

*Benson v. United States*, 969 F. Supp. 1129 (N.D. Ill. 1997) .................................................4

*Board of the County Comm'rs v. Brown*, 520 U.S. 397 (1997) ...............................................9

*Bowers v. DeVito*, 686 F.2d 616 (7th Cir. 1982) ....................................................................5

*Brown v. City of Chi.*, 633 F. Supp. 3d 1122 (N.D. Ill. 2022) ...............................................10

*Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824 (7th Cir. 2009) ...................................9

*Carter v. SSC Odin Operating Co., LLC*, 976 N.E.2d 344 (Ill. 2012) ....................................17

*Crowe v. Edgar*, No. 95 C 2155, 1995 U.S. Dist. LEXIS 17265 (N.D. Ill. Nov. 15, 1995) .....3

*Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) .................................................................9

*Currie v. Lao*, 592 N.E.2d 977 (Ill. 1992) .............................................................................14

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989) .............................5, 6

*Doe v. Calumet City*, 641 N.E.2d 498 (1994) ........................................................................17

*Doe v. Vill. of Arlington Heights*, 782 F.3d 911 (7th Cir. 2015) ..............................................7

*First Midwest Bank v. City of Chi.*, 988 F.3d 978 (7th Cir. 2021) ...................................5, 7, 9

*First Springfield Bank & Tr. v. Galman*, 720 N.E.2d 1068 (Ill. 1999) ..................................16

*Flynn v. Vancil*, 242 N.E.2d 237 (Ill. 1968) ..........................................................................18

*Generes v. Foreman*, 660 N.E.2d 192 (Ill. App. 1st Dist. 1995) ...........................................13

*Gill v. City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017) .......................................................10

*Groce v. Eli Lilly & Co.*, 193 F.3d 496 (7th Cir. 1999) .........................................................12

*Grund v. Donegan*, 700 N.E.2d 157 (Ill. App. 1st Dist. 1998) ..............................................13

*Guvenoz v. Target Corp.*, 30 N.E.3d 404 (Ill. App. Ct. 2015) ...............................................15

*Hamilton v. Daley*, 777 F.2d 1207 (7th Cir. 1985) .................................................................4

*Harper v. Albert*, 400 F.3d 1052 (7th Cir. 2005) ..................................................................10

*Hart v. Mannina*, 798 F.3d 578 (7th Cir. 2015) ...................................................................12

*Jackson v. Alverez*, 831 N.E.2d 1159 (Ill. App. Ct. 2005) ....................................................14

*King v. East St. Louis School Dist. 189*, 496 F.3d 812 (7th Cir. 2007) ...................................9

*Kinslow v. Pullara*, 538 F.3d 687 (7th Cir. 2008) .................................................................12

*Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201 (Ill. 1992) ........................................................17

*Larson v. Darnell*, 448 N.E.2d 249 (1983) ....................................................................................14

*Martinez v. California*, 444 U.S. 277 (1980) ..................................................................................8

*Meyer v. Dep't of Pub. Aid*, 912 N.E.2d 690 (Ill. App. Ct. 2009) ...............................................13

*Mora v. State*, 369 N.E.2d 868 (1977) ...........................................................................................14

*Nichols v. Fahrenkamp*, 2019 IL 123990 .......................................................................................13

*Ocasio v. Vill. of N. Aurora*, No. 20 CV 4908, 2022 U.S. Dist. LEXIS 196536 (N.D. Ill. Oct. 28, 2022) .............................................................................................................................................18

*Pacelli v. deVito*, 972 F.2d 871 (7th Cir. 1992) .............................................................................12

*Parks v. Kownacki*, 737 N.E.2d 287 (Ill. 2000) .............................................................................15

*Pearson v. Callahan*, 555 U.S. 223 (2009) ....................................................................................11

*Rakes v. Roederer*, 117 F.4th 968 (7th Cir. 2024) ..........................................................................5

*Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993) .............................................................................5

*Sandage v. Bd. of Comm'rs*, 548 F.3d 595 (7th Cir. 2008) ..........................................................7, 8

*Santy v. Bresee*, 473 N.E.2d 69 (Ill. App. Ct. 1984) ....................................................................16

*Smith v. Finkley*, 10 F.4th 725 (7th Cir. 2021) ..............................................................................11

*Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852 (7th Cir. 2010) .................................17

*T. S. v. Cty. of Cook, Ill.*, 67 F.4th 884 (7th Cir. 2023) ................................................................13

*Tobey v. Chibucos*, 890 F.3d 634 (7th Cir. 2018) ............................................................................4

*Tobin for Governor v. Ill. Bd. of Elections*, 268 F.3d 517 (7th Cir. 2001) ....................................4

*Trotter v. Klincar*, 748 F.2d 1177 (7th Cir. 1984) ..........................................................................4

*United States ex rel. Powell v. Irving*, 684 F.2d 494 (7th Cir. 1982) .....................................1, 3, 4

*Van de Kamp v. Goldstein*, 555 U.S. 335 (2009) .............................................................................4

*Vlastelica v. Brend,* 2011 IL App (1st) 102587 ..............................................................................13

*W. Bend Mut. Ins. Co. v. Cmty. Unit Sch. Dist. 300*, 193 N.E.3d 266 (Ill. App. Ct. 2021) .........15

*Walker v. Prisoner Review Bd.*, 769 F.2d 396 (7th Cir. 1985) .....................................................3, 4

*Wallace v. Adkins*, 115 F.3d 427 (7th Cir. 1997) .............................................................................7

*Weiland v. Loomis*, 938 F.3d 917 (7th Cir. 2019) ..........................................................................11

*Welborn v. Truitt,* No. 24 CV 3165, 2025 U.S. Dist. LEXIS 55036 (N.D. Ill. Mar. 25, 2025) ..............13

*Williams v. Orr*, No. 89-2515, 1992 U.S. App. LEXIS 23226 (7th Cir. Sep. 16, 1992) ..............3

*Wilson v. Kelkhoff*, 86 F.3d 1438 (7th Cir. 1996) ............................................................................3

*Wilson v. Perez*, No. 22 CV 03609, 2023 U.S. Dist. LEXIS 69149 (N.D. Ill. Apr. 20, 2023) ................17

*Wilson-Trattner v. Campbell*, 863 F.3d 589 (7th Cir. 2017) ...................................................8, 10

*Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994) ...........................................................................10

**Statutes**

745 ILCS 5/1 ...............................................................................................................................13

## INTRODUCTION

The Illinois Prisoner Review Board ("IPRB") is responsible for many important decisions in the Illinois criminal justice system, including the Mandatory Supervised Release ("MSR") conditions imposed on prisoners who have completed their sentences and determining whether individuals have violated MSR conditions. To ensure that the IPRB's board members can "impartially adjudicate the often difficult cases that come before them," courts have repeatedly held that they are entitled to absolute quasi-judicial immunity for their decisions. *United States ex rel. Powell v. Irving*, 684 F.2d 494, 497 (7th Cir. 1982). Nevertheless, Plaintiffs seek to hold two former IPRB board members, LeAnn Miller and Donald Shelton (the "Board Members"), liable for harm caused by an individual who was returned to MSR after a revocation hearing.

The facts of this case are indisputably tragic. Shortly after being returned to MSR, Crosetti Brand killed Jayden Perkins and injured his pregnant mother, Plaintiff Smith, when he broke into the victims' home and attacked them. Plaintiffs claim that the Board Members recklessly and knowingly granted parole to Brand, leading to violations of the Fourteenth Amendment and an array of state-law tort claims, but all the Plaintiffs' claims fail as a matter of law.

*First*, absolute quasi-judicial immunity bars the claims against the Board Members. *Second*, Plaintiffs fail to state constitutional violations against the Board Members. *Third*, the Board Members are entitled to qualified immunity because they did not violate clearly established law when they returned Brand to MSR. *Fourth*, Section 1983 disallows the supervisory liability claim against Shelton. *Fifth*, Plaintiffs' state-law claims are barred by sovereign immunity and public official immunity. *Lastly*, Plaintiffs have failed to allege the elements of their state law tort claims. Accordingly, this Court should dismiss the Board Members from this action.

## BACKGROUND

Brand was on MSR since early 2024 but, according to Plaintiffs, "repeatedly violated protective orders filed against him, including an active order of protection secured by [Plaintiff] Smith." Dkt. 2 ¶ 33. During that time, Brand allegedly sent multiple threats to Smith and attempted to enter her home on at least one occasion. Dkt. 45 ¶¶ 19-20. Smith states she reported these instances to local police and that a parole officer followed up with Brand about his attempt to visit Smith, but Brand denied he had done so. *Id.* Soon thereafter, Brand turned himself in to authorities and was placed under the Illinois Department of Corrections' ("IDOC") custody, due to multiple parole violations. *Id.* ¶ 20. On February 26, 2024, the IPRB held a revocation hearing.[1] *Id.* ¶ 24. Brand testified that he had *not* intentionally visited Smith's home. *Id.* ¶¶ 24(a), 20(b). Subsequently, the IPRB returned Brand to MSR, and he was released on March 12, 2024. *Id.* ¶ 24(d), 25.

On March 13, 2024, Plaintiff Smith and her young sons, Jayden Perkins and K.M., were at home when Brand gained entry and attacked Smith with a knife. *Id.* ¶ 28. Perkins tried to stop the attack, but Brand overpowered and ultimately killed him. Dkt. 2 ¶¶ 11-12, 46-49. On June 5, 2025, Brand was convicted of first-degree murder, attempted first-degree murder, armed robbery, home invasion, and domestic battery for his actions.[2]

Plaintiffs allege that Miller violated their constitutional rights by returning Brand to MSR, and that Shelton violated their rights by failing to supervise Miller appropriately. Dkt. 45 ¶ 3. Against the

---

[1] On an unspecified date prior to the IPRB hearing, Smith petitioned a state court for an (*ex parte*) emergency order of protection but it was denied. Dkt. 45 ¶ 23. The court scheduled a full hearing for March 13, 2024, the day of the attack. *Id.*

[2] *See* "Crosetti Brand Convicted of Stabbing Pregnant Woman and Killing Her Son," Cook County State's Attorney (Jun. 5, 2025), *available at* https://www.cookcountystatesattorney.org/news/crosetti-brand-convicted-stabbing-pregnant-woman-and-killing-her-son (last visited Dec. 1, 2025). This court may take judicial notice of the documents cited in and attached to this brief because they are public records "not subject to reasonable dispute." *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012); Fed. R. Evid. 201(b)(2) (allowing judicial notice of facts "whose accuracy cannot reasonably be questioned"); Fed. R. Evid. 902(6) (official documents and newspapers are self-authenticating). Fed. R. Evid. 101(b)(6) (rules on printed information apply to electronic sources of information).

Board Members, Plaintiffs bring claims of failure to protect (counts XXIV and XVI), state-created danger (counts XXV and XVII), willful and wanton conduct (counts XXVI and XVIII), negligence (counts XXVII and XIX), intentional infliction of emotional distress (counts XXVIII and XX), negligent infliction of emotional distress (counts XXIX and XXI), wrongful death (counts XXX and XXII), and a survival action (counts XXIII and XX[X]I). Plaintiffs also sued Shelton for supervisory liability (count XV). They seek monetary relief.

## ARGUMENT

I.  **This Court should dismiss all Section 1983 claims against the Board Members pursuant to Fed. R. Civ. P. 12(b)(6).**

### A.  *Absolute immunity protects the Board Members.*

Plaintiffs cannot maintain any claims against the Board Members because they are entitled to absolute quasi-judicial immunity. To ensure that IPRB board members can "impartially adjudicate the often difficult cases that come before them," federal courts have repeatedly held that the members of the IPRB are entitled to quasi-judicial immunity. *Powell*, 684 F.2d at 497 ("Just as the decision-making process of judges must be kept free from fear, so must that of parole board officials") (cleaned up); *Walker v. Prisoner Review Bd.*, 769 F.2d 396, 398 (7th Cir. 1985) ("parole board members are absolutely immune from damages when acting in the course of their duties as parole board members").[3]

Quasi-judicial immunity applies to IPRB members because they "perform an adjudicatory function comparable to judges which warrants absolute immunity." *Powell*, 684 F.2d at 496 ("the daily task of both judges and parole board officials is the adjudication of specific cases and controversies"); *Wilson v. Kelkhoff*, 86 F.3d 1438, 1444 (7th Cir. 1996) (collecting cases across circuits holding that "parole board members are absolutely immune from suit for their decision to grant, deny, or revoke parole") (cleaned up); *Benson v. United States*, 969 F. Supp. 1129, 1133 (N.D. Ill. 1997) ("parole officials'

---

[3] *See also Williams v. Orr*, No. 89-2515, 1992 U.S. App. LEXIS 23226, at *3-4 (7th Cir. Sep. 16, 1992) (parole board members immune for "all actions taken in the course of their official duties"); *Crowe v. Edgar*, No. 95 C 2155, 1995 U.S. Dist. LEXIS 17265, at *14 (N.D. Ill. Nov. 15, 1995) (same).

actions that are functionally comparable to those of the judiciary include not only the actual decision to grant, deny, or revoke parole, but also the activities that are part and parcel of the decision process") (cleaned up).[4] Absolute immunity also covers IPRB members' "administrative actions" because "all the tasks of Illinois Prisoner Review Board members relate to their adjudicatory function." *Walker*, 769 F.2d at 398 (quoting *Powell*, 684 F.2d at 497 n.4).

In Shelton's case, Plaintiffs appear to primarily take issue with his supervision of others' adjudicatory functions, rather than specific actions he took. Dkt. 45 ¶ 3. But where the decisionmaker is entitled to absolute immunity, that immunity extends from subordinates to supervisors, including Defendant Shelton. *See, e.g., Van de Kamp v. Goldstein*, 555 U.S. 335, 345-47 (2009) (holding that prosecutorial immunity extends to supervisors); *Hamilton v. Daley*, 777 F.2d 1207, 1213 n.5 (7th Cir. 1985) ("Since absolute immunity protects prosecutorial decisions, supervision of the prosecutors who make these decisions is similarly immune."); *Tobey v. Chibucos*, 890 F.3d 634, 651 (7th Cir. 2018) (holding that because a prosecutor and probation officer were entitled to immunity, the claims against their supervisors "must necessarily be dismissed").

Plaintiffs' allegations against the Board Members revolve entirely around their discretionary actions as IPRB members; they do not allege that their injuries stemmed from any action taken by the Board Members *outside* of those adjudicative roles. *See* Dkt. 45 at, *e.g.*, ¶ 3 ("Miller participated in granting Brand parole…. Shelton, as Chair of IPRB, failed to exercise adequate oversight."). Because the Board Members acted within their adjudicatory roles, actions for which they have absolute immunity, this Court should dismiss Plaintiffs' Section 1983 claims against them.

---

[4] *See also Tobin for Governor v. Ill. Bd. of Elections*, 268 F.3d 517, 521 (7th Cir. 2001) ("Absolute immunity is available to members of quasi-judicial adjudicatory bodies when they perform duties that are functionally comparable to those of a judicial officer"); *Trotter v. Klincar*, 748 F.2d 1177, 1182 (7th Cir. 1984) ("the grant of absolute immunity does not depend on the formal description of the official's activities, but rather on the nature of those activities").

**B.  Plaintiffs' claims cannot proceed as a matter of law for additional reasons.**

1.  Plaintiffs fail to plead sufficient facts to state a failure to protect claim.

Even aside from absolute quasi-judicial immunity, Plaintiffs' Section 1983 claims must be dismissed. The Due Process Clause of the Fourteenth Amendment generally does not impose a duty upon the State to protect individuals from harm by private actors. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989) ("[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982) ("[T]here is no constitutional right to be protected by the state against being murdered by criminals or madmen."). A narrow exception to that general rule, the state-created danger doctrine, allows suit against state officials "in limited circumstances [ ] for recklessly placing plaintiffs at risk of harm from third parties." *Rakes v. Roederer*, 117 F.4th 968, 969 (7th Cir. 2024); *see also, e.g.*, *Reed v. Gardner*, 986 F.2d 1122, 1127 (7th Cir. 1993) (police could be liable under Section 1983 for arresting a driver and giving keys to a drunk passenger). However, this exception does not apply here. Although Plaintiffs allege in a conclusory manner that the Board Members violated their due process rights by actively placing them in danger, those claims are based entirely on Plaintiffs' disagreement with Miller's decision to allow Brand's return to MSR, and Shelton's alleged failure to properly supervise that decision. A discretionary parole board decision does not amount to a violation of Plaintiffs' due process rights.

A "State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *First Midwest Bank v. City of Chi.*, 988 F.3d 978, 983, 987 (7th Cir. 2021) ("[A]s the Supreme Court explained more than three decades ago, the Clause does not impose a duty on the state to protect against injuries inflicted by private actors."). Here, Plaintiffs plead exactly that – that the Board Members violated their constitutional rights under the Fourteenth Amendment Due Process Clause by failing to protect them from Brand's private violence on March 13, 2024. *See*

Dkt. 45 ¶¶ 28-29. However, it has been clear since the Supreme Court issued its *DeShaney* decision in 1989 that Plaintiffs cannot maintain a failure to protect claim under these facts.

In *DeShaney*, a young boy experienced repeat abuse by his father. 489 U.S. at 191. Social workers were aware of the abuse but did not intervene to prevent it; ultimately, the abuse became so severe that the boy was left permanently disabled. *Id.* Nonetheless, the Supreme Court held that because "the State had no constitutional duty to protect [the child] against his father's violence, its failure to do so – though calamitous in hindsight – simply does not constitute a violation of the Due Process Clause." *Id.* at 202.

As in *DeShaney*, Plaintiffs here allege that state officials were, or should have been, aware of signs that danger may be lurking (*e.g.*, a history of recurrent domestic violence that was known to the state defendants, missed warning signs, and incorrect conclusions about the abuser's likelihood of escalating that violence). *See, e.g.*, Dkt. 45 ¶¶ 2, 15. Also like *DeShaney*, the Board Members recognize the "natural sympathy in a case like this to find a way for [families of victims of abuse] to receive adequate compensation for the grievous harm inflicted upon them," but that does not mean the Board Members violated any of Plaintiffs' constitutional rights. 489 U.S. at 202-03. As the Supreme Court stated in *DeShaney*, "before yielding to that impulse, it is well to remember … that the harm was inflicted not by the [State], but by [the abuser]." *Id.* at 203. That precedent remains binding on this Court. Despite the tragic situation that Brand's conduct caused, Plaintiffs cannot hold the Board Members responsible for private violence.

Plaintiffs note under their failure to protect claim that "[l]iability also attaches when state actors affirmatively create or increase the danger, or when a special relationship imposes a duty to protect." Dkt. 45 ¶ 263. But Plaintiffs point to no "special relationship" that imposed a duty to protect on the Board Members, and there is none. And, although Plaintiff asserts an independent "state-created danger" claim under Counts XVII and XXV, state-created danger is not a claim – it is a narrow

exception to the general rule that the state does not owe a duty to protect the public from harm from private actors. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916-17 (7th Cir. 2015). That exception does not apply here.

> (a) The state-created danger exception does not apply to Plaintiffs' failure to protect claim, nor have they pleaded state-created danger as a standalone claim.

Although Plaintiffs allege in a conclusory manner that the Board Members violated their due process rights by actively placing them in danger, that claim is based entirely on Plaintiffs' disagreement with the Board Members' decision to allow Brand's return to MSR. A discretionary parole board review decision does not satisfy the narrow "state-created danger" exception to *DeShaney*.

To state a substantive due process claim based on the state-created danger exception, Plaintiffs must satisfy three requirements. First, they must show that the state officials affirmatively placed them in a dangerous position that they otherwise would not have faced. *Wallace v. Adkins*, 115 F.3d 427, 429 (7th Cir. 1997). The Plaintiffs must show that the Board Members "did something that turned a potential danger into an actual one, rather than that [the defendants] just stood by and did nothing to prevent private violence." *Sandage v. Bd. of Comm'rs*, 548 F.3d 595, 600 (7th Cir. 2008) (affirming dismissal of state-created danger claim against state officials where prisoner murdered plaintiffs' decedents while on work release, despite decedents' reports to defendant officials of prisoners' ongoing threats). Second, the Plaintiffs "must show that the state's failure to protect [them] from that danger was the proximate cause of [their] injury." *First Midwest Bank*, 988 F.3d at 988. Lastly, "the state's failure to protect the plaintiff[s] must shock the conscience." *Id.* at 989. "Only the most egregious official conduct will satisfy this stringent inquiry." *Id.* (quotations omitted).

Plaintiffs allege that the Board Members created the danger that resulted in Plaintiffs' injuries by approving Brand's return to MSR and criticize the Board's decision as "reckless," but that allegation is not enough to hold the Board Members liable under the state-created danger exception. Plaintiffs

do not allege that either Board Member took affirmative steps to endanger them, and, indeed, the Board Members did not take any such steps. *Sandage*, 548 F.3d at 600. Where officials have "done nothing to restrict the victims' avenues of self help," the government "has no further obligation to give aid." *Id.* at 598 (internal citations omitted).

Here, Plaintiffs do not allege that the Board Members took any action to restrain Plaintiffs' avenues of self-help or that they otherwise took any affirmative action to harm the Plaintiffs or hinder their ability to protect themselves. In similar cases, courts have rejected attempts by plaintiffs to hold parole boards liable for murders committed by parolees whom they released. *See Martinez v. California*, 444 U.S. 277, 284–85 (1980) (murder by parolee was *not* a state-created danger because "the plaintiffs' decedent's death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law"); *see also Amos v. Lane*, 605 F. Supp. 775, 776–78 (N.D. Ill. 1985) (dismissing state-created danger claim against state officials for crimes committed by a parolee, noting that "[a]s tragic as the events recited in the Complaint are, they may not be placed at defendants' doorstep"); *Wilson-Trattner v. Campbell*, 863 F.3d 589, 592-94 (7th Cir. 2017) (where a plaintiff repeatedly sought police assistance from her ex-boyfriend, also a police officer, the Seventh Circuit held that the plaintiff's "general argument that the [defendants'] dismissive and indifferent attitudes to each of the incidents above endangered her by progressively emboldening [the abuser] … is [] squarely foreclosed by *DeShaney*).[5] Plaintiffs allege that the Board Members missed opportunities to intervene to protect them, not that they took affirmative actions that increased Plaintiffs' exposure to the private danger from Brand. The Plaintiffs thus cannot meet the first element of the state-created danger exception.

---

[5] The Seventh Circuit has also distinguished non-actionable private danger claims—like the instant case—from actionable claims where the state *affirmatively* disables a person from seeking help or care and then neglects to provide help or care when needed; for example, where children were left stranded by police after their parents' arrest. *Sandage*, 548 F.3d at 598.

Second, Plaintiffs cannot show that the Board Members were the proximate cause of their injuries. In this context, proximate cause "is a fact specific inquiry, involving a consideration of time, geography, range of potential victims, and the nature of harm that occurred." *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 829 (7th Cir. 2009) (affirming dismissal of state-created danger claim against city and county entities following decedent's murder by a known criminal recidivist less than one week after his release from custody). "A generalized risk of indefinite duration and degree is insufficient." *First Midwest Bank*, 988 F.3d at 989. The proximate cause inquiry is not satisfied where the "propensity for criminal acts existed without temporal boundaries." *Buchanan-Moore*, 570 F.3d at 829. In *Buchanan-Moore*, the Seventh Circuit found that the county's release of the recidivist "amount[ed] to only a 'but-for' causal link" and that the decedent's murder "was simply too remote a consequence of the County's actions to hold the County responsible under the federal civil rights law." *Id.* Here, Brand himself proximately caused Plaintiffs' injuries; Plaintiffs fail to allege that the Board Members' decision to return Brand to MSR proximately *caused* him to attack the Plaintiffs. Therefore, they also cannot meet the second element of the state-created danger exception.

Finally, Plaintiffs have not alleged facts suggesting that the Board Members' "conduct was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). If the public official had time "for reasoned deliberation in their decisions, ... the official's conduct [will be considered] conscience shocking when it evinces a deliberate indifference to the rights of the individual." *King v. East St. Louis School Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007). "Deliberate indifference is a stringent standard of fault, requiring proof that a [state] actor disregarded a known or obvious consequence of his actions." *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). Plaintiffs cannot establish that the Board Members exhibited conscience-shocking behavior by performing their duties as IPRB members. On the contrary, the Board Members were fulfilling their obligations to afford due process to all incarcerated individuals,

far from "conscience-shocking behavior."

Plaintiffs allege no facts beyond their disagreement with the Board Members' discretionary decision to return Brand to MSR and have, thereby, failed to allege a state-created danger claim against the Board Members.

### 2. Plaintiffs also do not state any failure to intervene claim.

To the extent Plaintiffs are really asserting a failure to intervene rather than a failure to protect claim, that, too, fails. A failure to intervene claim must establish that: (1) the defendant knew there was a constitutional violation, and (2) the defendant had the means to prevent it, but (3) failed to do so. *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017).

The Board Members cannot be held liable under a failure to intervene theory because it is essentially vicarious liability, which Section 1983 does not permit. *See Brown v. City of Chi.*, 633 F. Supp. 3d 1122, 1167 (N.D. Ill. 2022). Even if such a duty existed, in order to bring this claim Plaintiffs must show that a "constitutional violation has been committed by a law enforcement official; *and* the [defendant] had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis in original). A failure to intervene claim thus cannot exist independent of an underlying constitutional violation. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (finding that "[i]n order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation"). The Seventh Circuit has held that "even if the [defendants'] failure to intervene ultimately increased the danger to [the victim] by indirectly emboldening [the abuser] to continue to mistreat her, that would not distinguish her case from *DeShaney*." *Wilson-Trattner*, 863 F.3d at 594. Here, Plaintiffs have not established a constitutional violation, let alone that one of the Board Members were aware that a fellow state official was engaging in a constitutional violation and failed to stop it.

3.    The Board Members are entitled to qualified immunity.

The Board Members are also entitled to qualified immunity because their decision to return Brand to MSR did not violate any of the Plaintiffs' clearly established constitutional rights. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity balances . . . the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* A Section 1983 defendant is entitled to qualified immunity if (1) the alleged facts do not describe a violation of a constitutional right or (2) the federal right at issue was not "clearly established at the time of the alleged violation." *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021).

"The clearly established right must be defined with specificity" (*id.*), a requirement the Supreme Court has made clear "[o]ver and over." *Weiland v. Loomis*, 938 F.3d 917, 919 (7th Cir. 2019) (concluding that official was entitled to qualified immunity because no precedent established that his specific conduct was forbidden by law, and noting that the state-created danger doctrine is not "a rule of primary conduct forbidding *any* acts by public officials that increase private dangers"); *Finkley*, 10 F.4th at 742 ("A constitutional right is clearly established if 'the right in question is sufficiently clear that a reasonable official would understand that what he is doing violates that right.'").

As discussed above, Plaintiffs do not allege that the Board Members committed any constitutional violation, let alone that they violated a clearly established federal right. Plaintiffs have the burden to demonstrate the existence of a clearly established right at the time of the alleged violation, and they have not done so, nor can they. Instead, the cases discussed above establish the opposite. Accordingly, the Board Members are entitled to qualified immunity.

4. Plaintiffs' *respondeat superior* claims against Defendant Shelton fail because there is no supervisory liability under Section 1983.

All claims against Defendant Shelton that are founded in his role as a supervisor, including his alleged failure to supervise or train members of the IPRB properly, are unsustainable under Section 1983. *See Hart v. Mannina*, 798 F.3d 578, 596 (7th Cir. 2015) (dismissing claims against supervisor when claims against police officer were properly dismissed). That is because *respondeat superior* liability does not exist under Section 1983, and "supervisory liability does not attach automatically" based on Shelton's role as a "supervisor." *Pacelli v. deVito*, 972 F.2d 871, 877-78 (7th Cir. 1992); *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008) (*respondeat superior* does not apply to § 1983 claims). Plaintiffs are required to show "that the supervisor violated the Constitution through their own conduct." *Bedford v. Dewitt*, 695 F. Supp. 3d 998, 1002 (N.D. Ill. 2023) ("a supervisor officer failing to conduct meaningful reviews of the file, failing to investigate independently the information provided by the subordinate officer, and identifying weaknesses in the investigation but declining to investigate them may show ways the supervisors did not perform well, but did not amount to personal involvement in a constitutional violation.") (cleaned up). Plaintiffs do not adequately allege Shelton's personal involvement in violating any of their constitutional rights, as is required to maintain a Section 1983 claim; therefore, Plaintiffs' supervisory liability claims against Shelton should be dismissed.

## II. Plaintiffs' state-law claims are also legally insufficient and should be dismissed.

The usual practice in this circuit is for district courts to "dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). If the Court dismisses the federal claims against the Board Members, it need not reach the state law claims. In any event, those claims also fail as a matter of law.

### A. Quasi-judicial immunity bars Plaintiffs' state-law claims against the Board Members.

For the same reasons that Plaintiffs' federal claims against the Board members are barred by absolute quasi-judicial immunity (*see* Section I.A above), their state-law claims are also barred by that

doctrine. Illinois's judicial immunity doctrine tracks the federal doctrine. *Grund v. Donegan*, 700 N.E.2d 157, 161 (Ill. App. 1st Dist. 1998) (affirming dismissal of state-law claims based on absolute judicial immunity); *Generes v. Foreman*, 660 N.E.2d 192, 193-94 (Ill. App. 1st Dist. 1995) (same). Thus, absolute judicial immunity bars the state-law claims against the Board Members. *Vlastelica v. Brend,* 2011 IL App (1st) 102587, ¶ 21 (citing *Brisco v. LaHue,* 460 U.S. 325, 334-35 (1983)). Judicial immunity extends to members of quasi-judicial adjudicatory bodies when their duties are functionally equivalent to those of a judge or prosecutor. *Nichols v. Fahrenkamp*, 2019 IL 123990, P15 (citing *Butz v. Economou*, 438 U.S. 478, 512-13 (1978). The state-law claims against the Board Members should be dismissed accordingly.

### B.    Sovereign immunity bars Plaintiffs' state-law claims.

In addition, sovereign immunity rules bar Plaintiffs' state-law claims against the Board Members. *See Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 779 (7th Cir. 1991) ("state rules of immunity are binding in federal court with respect to state causes of action"). The State Lawsuit Immunity Act provides that "[t]he State of Illinois shall not be made a defendant or party in any court," subject to certain exceptions not applicable here. 745 ILCS 5/1. Illinois' immunity "extends to suits against a State agency or department," like the IPRB. *Meyer v. Dep't of Pub. Aid*, 912 N.E.2d 690, 693 (Ill. App. Ct. 2009). It further extends to State employees sued in their individual capacities where (1) there are no allegations that the State employee "acted beyond the scope of his authority through wrongful acts;" (2) "the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment;" and (3) "the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State." *T. S. v. Cty. of Cook, Ill.*, 67 F.4th 884, 892 (7th Cir. 2023) (internal quotations omitted); *see also, e.g.*, *Welborn v. Truitt,* No. 24 CV 3165, 2025 U.S. Dist. LEXIS 55036 (N.D. Ill. Mar. 25, 2025) (dismissing willful and wanton negligence, wrongful death, and survival claims against state employee under State Lawsuit Immunity Act). A personal-capacity suit against a state employee also is barred where a judgment against her

"could operate to control the actions of the State or subject it to liability." *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992).

Plaintiffs' state-law claims against the Board Members must be dismissed because Plaintiffs allege that the Board Members failed to perform their State employment duties in a manner Plaintiffs find acceptable. But Plaintiffs cannot dispute that the Board Members made decisions in furtherance of their official responsibilities. An employee's intent or subjective reasoning is irrelevant to determining whether their actions fell within the scope of their official duties. *Jackson v. Alverez*, 831 N.E.2d 1159, 1164-65 (Ill. App. Ct. 2005). Rather, the inquiry focuses on whether the employee's actions were connected to their designated functions. Here, they were. There are no allegations that the Board Members acted for a purpose unrelated to their employment as members of the IPRB or outside the scope of their employment responsibilities, and any duty the Board Members owed Plaintiffs was derived exclusively from their employment with the IPRB. Sovereign immunity bars Plaintiffs' state-law claims against the Board Members (counts XVIII through XXIII and XXVI through XXI), and they should be dismissed.

## C.     Public official immunity bars Plaintiffs' state-law claims.

In addition, public official immunity, which protects State employees from liability for acts falling within the discretion of their position, bars Plaintiffs' state-law claims. *Mora v. State*, 369 N.E.2d 868, 873 (1977); *Larson v. Darnell*, 448 N.E.2d 249, 250 (1983). Public official immunity affords state officials and employees full protection for acts performed within their official discretion. *Aboufariss v. City of DeKalb*, 713 N.E.2d 804, 811 (1999) (overruled on other grounds). "To be protected, a public official's actions must fall within the scope of an official's authority and should not be the result of malicious motives." *Id.* at 1065 (quotation omitted). Public official immunity applies to those acts which are unique to the particular public office. *Currie*, 592 N.E.2d at 984.

The Board Members are entitled to public official immunity, just as they are entitled to the

sovereign immunity. Plaintiffs do not allege that the Board Members caused any of their injuries through actions that lay outside the scope of their official discretion. Instead, Plaintiffs challenge discretionary decisions made by Miller and Shelton while performing their duties as IPRB members— namely, their decision to return Brand to MSR. Those actions are clearly "unique to the particular public office" that the Board Members held. Consequently, the doctrine of public official immunity bars Plaintiffs' state-law claims against the Board Members.

### D. Plaintiffs fail to state a violation of state law against the Board Members.

Finally, even if they are not barred by quasi-judicial immunity, sovereign immunity, and public official immunity, Plaintiffs' claims for negligence, willful and wanton conduct, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"), fail because they do not sufficiently allege the elements of these torts. Correspondingly, because they have not adequately pleaded any tort claims, they cannot maintain derivative claims under the Wrongful Death Act and Survival Act.

#### 1. Plaintiffs cannot state claims for negligence or willful and wanton conduct.

To establish a negligence claim (including NIED), a plaintiff must prove "(1) the existence of a duty of care owed to the plaintiff by the defendant; (2) a breach of that duty, and (3) an injury proximately caused by that breach." *Guvenoz v. Target Corp.*, 30 N.E.3d 404, 422 (Ill. App. Ct. 2015); *see also Parks v. Kownacki*, 737 N.E.2d 287, 296–97 (Ill. 2000) (same concerning NIED). Allegations of gross negligence must state the same elements as ordinary negligence and "must include the allegation of a deliberate intention to harm or a conscious disregard for the plaintiff's welfare." *W. Bend Mut. Ins. Co. v. Cmty. Unit Sch. Dist. 300*, 193 N.E.3d 266, 278 (Ill. App. Ct. 2021). Further, willful and wanton misconduct is not a separate tort but rather an aggravated form of negligence that includes "a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff." *Id.* at 276 (cleaned up).

As a matter of law, Plaintiffs cannot allege that either Board Member breached a duty to them. The existence of duty is a question of law, and its "resolution depends not only on the foreseeability and likelihood of the harm that occurred, but also on the general costs and consequences of requiring a party to prevent or guard against its occurrence." *Santy v. Bresee*, 473 N.E.2d 69, 72 (Ill. App. Ct. 1984). In this regard, "law enforcement officers and agencies do not owe a duty to individual citizens to protect them from crime unless a special relationship exists between the individual and the agency or officer." *Id.* This rule "reflects the judgment that to hold otherwise would impose an impossible burden on law enforcement agencies and officers, requiring them to carry out a myriad of difficult and frequently conflicting duties in guaranteeing the safety of every individual citizen." *Id.* "A person's request for ... protection will not by itself create the special relationship, and it cannot be specifically his for the asking." *Id.* Nor does a "law enforcement agency's or officer's knowledge of threats against a third person . . . create any relationship between that person and the agency or officer." *Id.* at 72-73.

Moreover, Plaintiffs cannot show that the Board Members caused them any injury. Under Illinois law, "if the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury." *First Springfield Bank & Tr. v. Galman*, 720 N.E.2d 1068, 1071 (Ill. 1999). Brand's return to MSR created a condition that he was no longer in custody, but it did not directly cause the Plaintiffs' injuries. Plaintiffs cannot satisfy *any* of the required elements for any of their negligence claims. As a result, this Court should dismiss their negligence and willful and wanton conduct claims.

2.    Plaintiffs have not stated a claim for intentional infliction of emotional distress.

Plaintiffs also have not stated an IIED claim against the Board Members. An IIED claim requires that a plaintiff show: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional

distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992)). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Id.* Where a defendant holds a position of power, "courts also examine whether the defendant reasonably believed that his objective was legitimate," and in such cases are given more latitude towards achieving those ends. *Doe v. Calumet City*, 641 N.E.2d 498, 507 (1994).

As the Plaintiffs allege, the Board Members deliberated in accordance with their adjudicative roles. Dkt. 45 ¶¶ 3, 13-14. There is nothing extreme or outrageous about the Board Members performing their jobs, regardless of Plaintiffs' disagreement with their decisions. Plaintiffs provide no allegations that support an IIED claim, and their claim should be dismissed accordingly.

### 3. Plaintiffs have not stated a Wrongful Death Act and Survival Act claim.

Because Plaintiffs have not stated any state-law tort claims, they cannot maintain derivative claims under the Wrongful Death Act and Survival Act. *See, e.g.*, *Carter v. SSC Odin Operating Co., LLC*, 976 N.E.2d 344, 354, 359 (Ill. 2012) ("a wrongful-death action is dependent upon the decedent's entitlement to maintain an action for his or her injury" and the "Survival Act allows an action . . . to survive the death of the injured person").

"The Survival Act does not create a statutory cause of action [but] merely allows a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before [s]he died." *Wilson v. Perez*, No. 22 CV 03609, 2023 U.S. Dist. LEXIS 69149, at *3-4 (N.D. Ill. Apr. 20, 2023) (internal citation omitted). As established above, no action against the Board Members had accrued to Plaintiffs' decedent before his death; accordingly, Plaintiffs cannot maintain a survival action on his behalf.

By contrast, wrongful death claims allow "surviving spouses and next of kin to recover for

injuries *they* incurred because of the death." *Ocasio v. Vill. of N. Aurora*, No. 20 CV 4908, 2022 U.S. Dist. LEXIS 196536, at *7 (N.D. Ill. Oct. 28, 2022) (internal citations omitted). Nonetheless, Plaintiffs do not have a viable Wrongful Death Act claim because the "essential elements for recovery under the Wrongful Death Act include a duty of the defendant toward the decedent, a breach of that duty, and pecuniary damages resulting therefrom to persons designated by the Act." *Flynn v. Vancil*, 242 N.E.2d 237, 241 (Ill. 1968). As discussed above, Plaintiffs cannot allege that the Board Members owed them a duty that they breached, so they cannot state a claim under the Wrongful Death Act.

Plaintiffs fail to state a violation of state law against the Board Members; thus, their state law claims should be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should dismiss this action against LeAnn Miller and Donald Shelton.

Dated: December 2, 2025

Respectfully submitted,

*/s/ Elizabeth J. Andonova Mallory*

**KWAME RAOUL**
Attorney General of Illinois

ELIZABETH J. ANDONOVA MALLORY
LEE STARK
Assistant Attorneys General
Government Representation Division
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-4355
E.AndonovaMallory@ilag.gov